**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

Homer Ray Roseberry,

                Petitioner,

v.

Charles L. Ryan, et al.,

                Respondents.

No. CV-15-1507-PHX-NVW

<u>DEATH PENALTY CASE</u>

**ORDER**

Before the Court is Petitioner Homer Roseberry's Motion for Evidentiary Development. (Doc. 57.) Respondents filed a response in opposition to the motion and Roseberry filed a reply. (Docs. 67, 68.) The motion is denied in part and granted in part, as set forth herein.

## I.    BACKGROUND

The Arizona Supreme Court, in *State v. Roseberry*, 210 Ariz. 360, 363, 111 P.3d 402, 405 (2005), summarized the facts underlying Roseberry's convictions and sentences as follows.

In 1997, Roseberry and his wife, Diane, met members of a marijuana-smuggling ring known as the Pembertons. In late 1998 and early 1999, Roseberry was paid by the Pembertons to transport marijuana in his motorhome from Arizona to Michigan.

In early October of 2000, Roseberry agreed to transport more than 1,000 pounds of marijuana. When Roseberry arrived in Phoenix to pick up the load, the Pembertons

informed him that Fred Fottler would accompany him on the trip. Several large duffle bags of marijuana were then loaded into the motorhome.

On October 20, 2000, Roseberry set off from Phoenix. Pursuant to a scheme he devised with his friend Charles Dvoracek, Dvoracek traveled to Wickenberg, Arizona, where he was supposed to intercept and "steal" the motorhome and marijuana while Roseberry and Fottler were eating at a Denny's restaurant. In the early morning hours of October 21, 2000, Dvoracek parked his truck on the side of the road and waited for the motorhome to stop at Denny's. Instead of stopping at the restaurant, however, Roseberry drove back onto the highway and continued north toward his home in Nevada.

Dvoracek followed the motorhome, which Roseberry soon pulled over onto the shoulder of the road. As Dvoracek pulled in behind, he heard two pops. Roseberry stepped out of the motorhome and told Dvoracek that he had "shot the guy" the Pembertons had sent to accompany him on the drug run.

Roseberry shot Fottler in the back of the head. Fottler was still making gurgling noises, so Roseberry returned to the motorhome and shot him again. Roseberry and Dvoracek then wrapped Fottler's body in a blanket and dumped it into the gully on the side of the road.

As Roseberry drove through Arizona, he threw his gun out the window of the motorhome. Roseberry and Dvoracek stopped in Kingman, Arizona, to remove other evidence of the crime. They took a blood-stained sheet from the motorhome and threw it over a fence. They also buried Fottler's wallet and moved one of the duffle bags of marijuana from the motorhome to Dvoracek's truck so Dvoracek could sell the drugs to raise money in case it became necessary to bail Roseberry out of jail.

They arrived at Roseberry's home in Henderson, Nevada, on October 21, 2000, and put the motorhome and drugs into storage. Later that day, Roseberry confided to his wife that he killed Fottler so he could steal the marijuana and sell it himself. Roseberry told her that his story was going to be that "some Mexicans" with guns were in the motorhome and had killed Fottler while Roseberry was out of the vehicle.

Diane Roseberry called her brother, Otis Bowman, and asked him to fly in from Indiana, which he did on October 22, 2000. Two drug dealers flew in with Bowman. They agreed to purchase about 300 pounds of marijuana, which Bowman later transported to Ohio in Roseberry's motorhome. Roseberry and Dvoracek split the money from the sale.

Fottler's body was soon discovered. Investigative leads from United States Customs agents led Yavapai County Deputy Sheriffs to Roseberry, whose motorhome customs agents had observed while surveilling a Tucson stash house.

Roseberry was tried and convicted of first-degree murder and drug offenses. In the aggravation phase of his trial, the jury found that the State had proven beyond a reasonable doubt that Roseberry murdered Fottler for pecuniary gain. In the penalty phase, Roseberry presented mitigation evidence on five statutory and five non-statutory mitigating circumstances. The jury determined that the mitigation evidence was not sufficiently substantial to warrant leniency and returned a verdict of death for the murder. The court sentenced Roseberry to death.

On direct appeal, the Arizona Supreme Court affirmed the convictions and sentences. *Roseberry*, 210 Ariz. 360, 111 P.3d 402. Roseberry filed a petition for post-conviction relief ("PCR") in April 2012. The trial court denied the petition and the Arizona Supreme Court denied Roseberry's petition for review.

On December 22, 2015, Roseberry filed a sealed petition for writ of habeas corpus in this Court. (Doc. 23.) He filed an unsealed petition on August 8, 2016. (Doc. 32.) The petition raises 47 claims and dozens of subclaims. (*Id.*) In the pending motion for evidentiary development, Roseberry seeks expansion of the record, discovery, and/or an evidentiary hearing with respect to 27 of those claims. (Doc. 57.)

## II.     APPLICABLE LAW

### A.     AEDPA

Federal habeas claims are analyzed under the framework of the Antiterrorism and Effective Death Penalty Act ("AEDPA"). Under the AEDPA, a petitioner is not entitled to habeas relief on any claim adjudicated on the merits in state court unless the state

court's adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in state court. 28 U.S.C. § 2254(d).

The Supreme Court has emphasized that "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Williams v. Taylor*, 529 U.S. 362, 410 (2000). Under § 2254(d), "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011).

In *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011), the Court reiterated that "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *See Murray (Robert) v. Schriro*, 745 F.3d 984, 998 (9th Cir. 2014) ("Along with the significant deference AEDPA requires us to afford state courts' decisions, AEDPA also restricts the scope of the evidence that we can rely on in the normal course of discharging our responsibilities under § 2254(d)(1).").

However, *Pinholster* does not bar evidentiary development where the court has determined, based solely on the state court record, that the petitioner "has cleared the § 2254(d) hurdle." *Madison v. Commissioner, Alabama Dept. of Corrections*, 761 F.3d 1240, 1249–50 (11th Cir. 2014); *see Pinholster*, 563 U.S. at 185; *Henry v. Ryan*, 720 F.3d 1073, 1093 n.15 (9th Cir. 2013) (explaining that *Pinholster* bars evidentiary hearing unless petitioner satisfies § 2254(d)); *Williams v. Woodford*, 859 F.Supp.2d 1154, 1161 (E.D. Cal. 2012).

For claims not adjudicated on the merits in state court, federal review is generally not available when the claims have been denied pursuant to an independent and adequate state procedural rule. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). In Arizona, there are two avenues for petitioners to exhaust federal constitutional claims: direct appeal and PCR proceedings. Rule 32 of the Arizona Rules of Criminal Procedure governs PCR proceedings and provides that a petitioner is precluded from relief on any

claim that could have been raised on appeal or in a prior PCR petition. Ariz. R. Crim. P. 32.2(a)(3).

For unexhausted and defaulted claims, "federal habeas review . . . is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. *Coleman* further held that ineffective assistance of counsel in PCR proceedings does not establish cause for the procedural default of a claim. *Id.*

In *Martinez v. Ryan*, 566 U.S. 1 (2012), however, the Court established a "narrow exception" to the rule announced in *Coleman*. Under *Martinez*, a petitioner may establish cause for the procedural default of an ineffective assistance claim "by demonstrating two things: (1) 'counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of *Strickland* . . .' and (2) 'the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit.'" *Cook v. Ryan*, 688 F.3d 598, 607 (9th Cir. 2012) (quoting *Martinez*, 566 U.S. at 14); *see Clabourne v. Ryan*, 745 F.3d 362, 377 (9th Cir. 2014), *overruled on other grounds by McKinney v. Ryan*, 813 F.3d 798 (9th Cir. 2015).

## B. Evidentiary Development

A habeas petitioner is not entitled to discovery "as a matter of ordinary course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997); *see Campbell v. Blodgett*, 982 F.2d 1356, 1358 (9th Cir. 1993). Rule 6 of the Rules Governing Section 2254 Cases provides that "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery." Rule 6(a), Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254. Whether a petitioner has established "good cause" for discovery requires a habeas court to determine the essential elements of the petitioner's substantive claim and evaluate whether "specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." *Bracy*, 520 U.S. at 908–09.

An evidentiary hearing is authorized under Rule 8 of the Rules Governing § 2254 Cases. Pursuant to § 2254(e)(2), however, a federal court may not hold a hearing unless it first determines that the petitioner exercised diligence in trying to develop the factual basis of the claim in state court. *See Williams (Michael) v. Taylor*, 529 U.S. 420, 432 (2000). If the failure to develop a claim's factual basis is attributable to the petitioner, a federal court may hold an evidentiary hearing only if the claim relies on (1) "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable" or (2) "a factual predicate that could not have been previously discovered through the exercise of due diligence." 28 U.S.C. § 2254(e)(2). In addition, "the facts underlying the claim [must] be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact finder would have found the [petitioner] guilty of the underlying offense." *Id.*

When the factual basis for a claim has not been fully developed in state court, a district court first determines whether the petitioner was diligent in attempting to develop the record. *See Baja v. Ducharme*, 187 F.3d 1075, 1078 (9th Cir. 1999). The diligence assessment requires a determination of whether a petitioner "made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court." *Williams (Michael)*, 529 U.S. at 435. For example, when there is information in the record that would alert a reasonable attorney to the existence and importance of certain evidence, the attorney "fails" to develop the factual record if he does not make reasonable efforts to investigate and present the evidence to the state court. *Id.* at 438–39, 442.

Absent unusual circumstances, diligence requires that a petitioner "at a minimum, seek an evidentiary hearing in state court in the manner prescribed by state law." *Williams (Michael)*, 529 U.S. at 437. The mere request for an evidentiary hearing, however, may not be sufficient to establish diligence if a reasonable person would have taken additional steps. *See Dowthitt v. Johnson*, 230 F.3d 733, 758 (5th Cir. 2000); *Alley v. Bell*, 307 F.3d 380, 390–91 (6th Cir. 2002); *Koste v. Dormire*, 345 F.3d 974, 985–86 (8th Cir. 2003). The Ninth Circuit has explained that "a petitioner who 'knew of the

existence of [ ] information' at the time of his state court proceedings, but did not present it until federal habeas proceedings, 'failed to develop the factual basis for his claim diligently.'" *Rhoades v. Henry*, 598 F.3d 511, 517 (9th Cir. 2010) (quoting *Cooper-Smith v. Palmateer*, 397 F.3d 1236, 1241 (9th Cir. 2005)).

Significantly, an evidentiary hearing is not required if the issues can be resolved by reference to the state court record. *Totten v. Merkle*, 137 F.3d 1172, 1176 (9th Cir. 1998) ("It is axiomatic that when issues can be resolved with reference to the state court record, an evidentiary hearing becomes nothing more than a futile exercise."); *see Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) ("[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing."). Likewise, "an evidentiary hearing is not required if the claim presents a purely legal question and there are no disputed facts." *Beardslee v. Woodford*, 358 F.3d 560, 585 (9th Cir. 2004); *see Hendricks v. Vasquez*, 974 F.2d 1099, 1103 (9th Cir. 1992).

Finally, under Rule 7 of the Rules Governing Section 2254 Cases, a federal habeas court is authorized to expand the record to include additional material relevant to the petition. The purpose of expansion of the record under Rule 7 "is to enable the judge to dispose of some habeas petitions not dismissed on the pleadings, without the time and expense required for an evidentiary hearing." Advisory Committee Notes, Rule 7, 28 U.S.C. foll. § 2254; *see also Blackledge v. Allison*, 431 U.S. 63, 81–82 (1977). Expanding the record serves that purpose here.

Section 2254(e)(2) limits a petitioner's ability to present new evidence through a Rule 7 motion to the same extent that it limits the availability of an evidentiary hearing. *See Cooper–Smith*, 397 F.3d at 1241 (applying § 2254(e)(2) to expansion of the record when intent is to bolster the merits of a claim with new evidence) (citing *Holland v. Jackson*, 542 U.S. 649, 652–53 (2004) (per curiam)). Accordingly, when a petitioner seeks to introduce new affidavits and other documents never presented in state court, he must either demonstrate diligence in developing the factual basis in state court or satisfy the requirements of § 2254(e)(2).

## III.    DISCUSSION

Roseberry seeks expansion of the record, discovery, and/or an evidentiary hearing on Claims 1–17, 19, 20, 22, 24–28, 45, and 47.  He seeks discovery of records from 28 different sources concerning his health and state of mind while in jail, trial counsel's performance, and the gambling habits of the State's witnesses.  (Doc. 57 at 14–17.)  He also seeks to depose trial and appellate counsel, the State's witnesses and various family members, law enforcement officers, and jail personnel and medical staff.  (*Id.* at 17–22.)  He seeks to expand the record with 212 exhibits.  (*Id.* at 23–58.)    These include declarations and exhibits in support of Roseberry's claims of mental incompetence and a neurological condition, jury misconduct, trial court errors, and ineffective assistance of trial and appellate counsel.  (*Id.* at 23–57.)  Many of the declarations contain potentially mitigating information from people who knew Roseberry.  Finally, Roseberry seeks an evidentiary hearing.  (*Id.* at 58.)

The claims for which Roseberry seeks evidentiary development include both exhausted and unexhausted claims.    The Court addresses Roseberry's evidentiary development requests as follows.

### A.    Unexhausted, Defaulted Claims

Respondents assert that the following claims are procedurally defaulted: 1–4, 6–10, 12–17, 19, 22, 24 (in part), 27, and 45.[1]  Roseberry did not raise these claims in state court.  The claims do not allege ineffective assistance of trial counsel; nevertheless, Roseberry contends their default is excused under *Martinez* by the ineffective assistance of appellate or PCR counsel.

In their answer to Roseberry's habeas petition, Respondents "expressly waive their affirmative defense of procedural default on all of Roseberry's ineffective assistance of counsel claims."  (Doc. 45 at 105.)  Roseberry asserts that this waiver excuses the default

---

[1] Roseberry also seeks evidentiary development with respect to Claim 5, which alleges that he "may currently be incompetent to assist counsel."  (Doc. 23 at 29.)  This claim is not cognizable on habeas review as it does not challenge the legality of Roseberry's conviction or sentence.  *See* 28 U.S.C. § 2254(a).

of all claims not raised in state court due to the ineffectiveness of his appellate and PCR counsel. The Court disagrees.

*Martinez* held that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." 566 U.S. at 8. *Martinez* applies only to claims of ineffective assistance of trial counsel; it has not been expanded to other types of claims. *Pizzuto v. Ramirez*, 783 F.3d 1171, 1177 (9th Cir. 2015) (explaining that the Ninth Circuit has "not allowed petitioners to substantially expand the scope of *Martinez* beyond the circumstances present in *Martinez*"); *Hunton v. Sinclair*, 732 F.3d 1124, 1126–27 (9th Cir. 2013) (denying petitioner's argument that *Martinez* permitted the resuscitation of a procedurally defaulted *Brady* claim, holding that only the Supreme Court could expand the application of *Martinez* to other areas).

None of these defaulted claims alleges ineffective assistance of trial counsel. Therefore, the failure of PCR counsel to raise the claims does not excuse their default. Only with respect to Claims 1 and 45 does Roseberry assert that a fundamental miscarriage of justice will occur if the claims are not heard, but he offers no argument in support of those assertions. *See Schlup v. Delo*, 513 U.S. 298, 327 (1995) (explaining that to establish a "fundamental miscarriage of justice" a petitioner must present evidence showing that a "constitutional violation has probably resulted in the conviction of one who is actually innocent"). The claims therefore remain procedurally defaulted and are barred from federal review. Evidentiary development is denied on that basis.

There are other grounds for denying evidentiary development. Some of the claims, including Claims 1, 2, 10, 13, 16, 17, and subclaims of Claims 22 and 24, involve purely legal issues.[2] Other claims, again including Claims 10 and 13 and parts of claims

---

[2] In Claim 1, Roseberry alleges that the trial court violated his rights when it instructed the jury that it could not consider mitigation if Roseberry "fail[ed] to prove causation" between the mitigation evidence "and the crime." (Doc. 32 at 41.) In Claim 2, Roseberry alleges that his rights were violated when the judge, rather than the jury, made the *Enmund/Tison* finding. (*Id.* at 53.) In Claim 10, Roseberry alleges that the state court violated his confrontation rights by admitting testimony and evidence against him that was not authored by the testifying witnesses. (*Id.* at 77.) In Claim 13,

22 and 24, involve no disputed facts and can be resolved on the record. Accordingly, evidentiary development is unnecessary. *See Landrigan*, 550 U.S. at 474; *Beardslee*, 358 F.3d at 585.

Even if these defaulted claims were not barred from review, Roseberry's requests for evidentiary development must be denied. Roseberry has not shown good cause for the requested discovery, nor has he demonstrated that he was diligent in pursuing the materials with which he now seeks to expand the record.

For example, Claims 3 and 4 allege that the State violated its obligations under *Brady* and failed to disclose information or presented false evidence. Roseberry, however, offers only speculation and conclusory allegations in support of these claims.[3] (Doc. 32 at 56–60.) In Claim 3, Roseberry asserts, "On information and belief, the State has violated its duty to disclose material information favorable to Mr. Roseberry. . . . [O]ngoing investigation may reveal relevant, material information that was never disclosed to Mr. Roseberry's counsel. Evidentiary development and discovery may reveal further information relevant to this claim." (*Id.* at 57.)

These allegations are insufficient to establish entitlement to discovery. The Ninth Circuit has explained that in habeas proceedings "discovery is only available in the discretion of the court and for good cause shown" and is not "meant to be a fishing expedition for habeas petitioners to explore their case in search of its existence." *Rich v. Calderon*, 187 F.3d 1064, 1067–68 (9th Cir. 1999) (internal quotation marks omitted).

---

Roseberry alleges violations based on the "Yavapai County Attorney's Office policy of automatically seeking capital punishment in every case in which at least one aggravating circumstance might exist." (*Id.* at 85.) In Claim 16, Roseberry argues that his death sentence is disproportionate and therefore cruel and unusual. (*Id.* at 92.) In Claim 17, Roseberry alleges that his rights were violated because he was convicted and sentenced to death without a unanimous jury decision. (*Id.* at 95.) Claims 22 and 24 allege various errors by the trial court. (*Id.* at 103–38.)

[3] Roseberry seeks to expand the record with declarations and other records regarding Diane Roseberry, the Dvoraceks, and Otis Bowman. (Doc. 57 at 40–41.) He also seeks to depose the Dvoraceks, the Dvoraceks' son and daughter, detectives, a former U.S. Customs Internal Affairs Officer, and employees of the Yavapai County Sheriff's Department. (*Id.* at 18–21.)

"Mere speculation that some exculpatory material may have been withheld is unlikely to establish good cause for a discovery request on collateral review." *Strickler v. Greene*, 527 U.S. 263, 286 (1999); *see Thomas v. United States*, 849 F.3d 669, 681 (6th Cir. 2017) ("Beyond mere speculation, Thomas provides no evidence that the Government withheld evidence that it was obligated to disclose. Bald assertions and conclusory allegations do not provide sufficient ground to warrant requiring the government to respond to discovery or to require an evidentiary hearing."); *Murphy v. Johnson*, 205 F.3d 809 (5th Cir. 2000) (explaining that petitioner failed to make out prima facie *Brady* claim based on speculative and conclusory allegation that prosecutor failed to disclose secret deal with jailhouse informant who testified against him and thus he was not entitled to discovery).

Roseberry's bare allegation that *Brady* materials may exist does not establish good cause for discovery. If such speculation were sufficient, "every habeas petitioner would be able to obtain broad discovery simply by asserting that the government withheld some unspecified evidence in violation of *Brady*." *Gathers v. New York*, No. 11-CV-1684 JG, 2012 WL 71844, at *9 (E.D.N.Y. Jan. 10, 2012); *Renis v. Thomas*, No. 02-CV-9256 DABRLE, 2003 WL 22358799, at *2 (S.D.N.Y. October 16, 2003) (explaining that petitioner's generalized statements about possibility of uncovering materials did not warrant discovery because statements were vague and overbroad).

Evidentiary development on these claims is also foreclosed because Roseberry did not act diligently in state court. For example, in support of Claims 8 and 9, Roseberry seeks to expand the record to include declarations from jurors at his trial. A reasonably diligent petitioner who believed he had a viable jury misconduct claim would have obtained the declarations during the state court proceedings. *See Rhoades*, 598 F.3d at 517; *Cooper-Smith*, 397 F.3d at 1241; *Ward v. Hall*, 592 F.3d 1144, 1160–61 (11th Cir. 2010) ("Given the fact that Ward was afforded approximately three years to secure affidavits and witness testimony prior to his state habeas evidentiary hearings and managed to submit numerous exhibits and affidavits during the course of his hearings . . . we cannot credit his claim that he exercised due diligence.").

Next, in Claim 19, Roseberry alleges "actual innocence of the death penalty." (Doc. 32 at 98.) This claim is premised on Roseberry's challenge to the pecuniary gain aggravating factor. (*Id.* at 98–99.) Even if a freestanding claim of actual innocence were cognizable on habeas review, *see Herrera v. Collins*, 506 U.S. 390, 417 (1993), evidentiary development is not necessary for the Court to evaluate the claim.

Finally, with respect to Claim 45, Roseberry alleges that his execution would violate the Eighth and Fourteenth Amendments because he is mentally ill. (Doc. 32 at 238.) Respondents contend that the claim is not cognizable.

In *Ford v. Wainwright*, 477 U.S. 399, 409–10 (1986), the Supreme Court held that it is a violation of the Eighth Amendment to execute someone who cannot comprehend that his execution is based on a conviction for murder. Roseberry, however, does not contend that he is incompetent to be executed under *Ford*, only that he is "seriously mentally ill." (Doc. 32 at 238.) In any event, a determination of incompetence cannot be made until an execution warrant is issued making the petitioner's execution imminent. *See Martinez-Villareal v. Stewart*, 118 F.3d 628, 630 (9th Cir. 1997) (citing *Herrera v. Collins*, 506 U.S. at 406). Claim 45 is denied.

## B. Exhausted Claims

Respondents contend that under *Pinholster,* Roseberry is not entitled to evidentiary development on Claims 11, 20, and 24 because those claims were adjudicated on the merits in state court. They also argue that evidentiary development is foreclosed because Roseberry did not diligently pursue the new evidence in state court. For the reasons set forth next, Roseberry is not entitled to evidentiary development on these claims.

In Claim 11, Roseberry alleges that "[o]n information and belief, jurors failed to consider any of the mitigating circumstances proven by a preponderance of the evidence." (Doc. 32 at 81.) In Claim 20, he alleges that there was insufficient evidence to prove the pecuniary gain aggravating factor. (*Id.* at 99.) The Arizona Supreme Court denied these claims on direct review. *Roseberry*, 210 Ariz, at 369, 373, 111 P.3d at 411, 415. In Claim 24, Roseberry alleges that his rights were violated by individual and

cumulative trial court errors. (*Id.* at 105.) The Arizona Supreme Court addressed several of these allegations. *Id.* at 369–70, 111 P.3d at 411– 412.

First, the Court rejects Roseberry's assertion that *Martinez*, not *Pinholster*, governs these claims because "the evidence and allegations [he] seeks to develop fundamentally alter the claim raised to the state court." (Doc. 68 at 22, 27, 28.) Roseberry cites *Dickens v. Ryan*, 740 F.3d 1302 (9th Cir. 2014) (en banc), which allows a federal habeas court to consider new evidence that "fundamentally altered" a previously asserted claim of ineffective assistance of counsel, explaining that *Pinholster*'s prohibition on new evidence applies "only to claims 'previously adjudicated on the merits in State court proceedings.'" *Id.* at 1320. Even if Roseberry discovered new evidence so that these claims were fundamentally altered and therefore procedurally defaulted, he cannot overcome the default under *Martinez* because *Martinez* applies only to claims of ineffective assistance of trial counsel. Claims 11, 20, and 24 do not allege ineffective assistance of trial counsel.

Additionally, Roseberry is not entitled to evidentiary development on these claims because they may be resolved on the record. *See Landrigan*, 550 U.S. at 474. In support of his allegations in Claim 11, Roseberry argues that the jury was improperly instructed. (Doc. 32 at 81–83; *see* Doc. 49 at 45–49.) The record is complete with respect to this allegation. Roseberry also asserts that the jurors did not understand the concept of mitigation because of trial counsel's poor presentation, and that some jurors were not open to considering mitigation because of counsel's poor performance during jury selection. (*Id.*) To the extent Roseberry seeks to expand the record with declarations detailing the jurors' sentencing phase deliberations, such evidence is not admissible and the Court will not consider it. *See Tanner v. United States*, 483 U.S. 107, 121 (1987); Fed. R. Evid. 606(b).

Claim 20 challenges the sufficiency of the evidence presented at trial and sentencing in support of the pecuniary gain aggravating factor. Additional evidence is unnecessary because there is nothing that can be added to the facts upon which the state courts' findings were based. "Whether the evidence was sufficient . . . must be

determined from a review of the evidence in the record in the *state* proceedings.  No evidentiary hearing [is] required." *Bashor v. Risley*, 730 F.2d 1228, 1233 (9th Cir. 1984); *see Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (articulating the standard for habeas review of state court's application of aggravating factor—i.e., whether any rational factfinder could have determined that the factor was proved); *Jackson v. Virginia*, 443 U.S. 307, 322 (1979) (explaining this type of claim almost never necessitates an evidentiary hearing).

As already noted, Claim 24 consists of numerous subclaims alleging trial error, some of which were exhausted in state court.  The Court finds these claims resolvable on the state court record.  A number of the exhausted subclaims challenge the court's instructions to the jury.  Another subclaim alleges that the trial court improperly struck jurors for cause.  No further evidence is necessary to address these allegations. *Totten*, 137 F.3d at 1176; *see Landrigan*, 550 U.S. at 474.  Other subclaims raise purely legal questions challenging the trial court's failure to strike the pecuniary gain aggravating factor and alleging an *ex post* facto violation.  Again, evidentiary development is not necessary to resolve these subclaims. *Beardslee*, 358 F.3d at 585.

### C.    Ineffective Assistance of Counsel Claims

Roseberry raises three ineffective assistance of counsel claims, each consisting of numerous subclaims. In Claim 25, Roseberry alleges that trial counsel performed ineffectively.  (Doc. 32 at 138.)  In Claim 26, he alleges ineffective assistance of appellate counsel.  (*Id.* at 169.)  In Claim 28, he alleges ineffective assistance of PCR counsel.  (*Id.* at 182.)

Claims of ineffective assistance of counsel are governed by the principles set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  To prevail under *Strickland,* a petitioner must show that counsel's representation fell below an objective standard of reasonableness and that the deficiency prejudiced the defense. *Id.* at 687–88.

Respondents have waived any procedural default defense to these claims.  (Doc. 45 at 105.)  They contend, therefore, that while the claims are reviewed *de novo*, the "liberal evidentiary development allowed with *Martinez* claims does not apply here." *Id.*

at 106. The Ninth Circuit, however, has rejected this proposition, finding "there is no merit to the government's argument that it can prevent *Martinez* from applying by simply refraining from raising the procedural bar." *Hill v. Glebe*, 654 F.App'x 294, 295 (9th Cir. 2016). The court explained:

> The federal courts can apply the procedural bar sua sponte. And the state's position that it must voluntarily raise the procedural bar before a petitioner can have a hearing under *Martinez* would lead to absurd results: The government could opt never to raise the procedural bar, effectively preventing a petitioner from ever developing a factual record to support his ineffective assistance claim.

*Id.* (citations omitted).

The Court cannot, as Respondents suggest, review *de novo* a claim that was not presented in state court without taking into account the evidence now offered to support that claim. Therefore, Respondents' waiver of procedural default does not prevent the Court from considering Roseberry's requests for evidentiary development.

### 1. Claim 25

Roseberry requests discovery, expansion of the record, and an evidentiary hearing in support of his ineffective assistance of counsel claims. Claim 25 consists of dozens of allegations that trial counsel performed ineffectively at both the guilt and penalty phases of trial.

The allegations of guilt-phase ineffective assistance of counsel challenge seemingly every aspect of counsel's performance, and include the overarching claim that counsel were not qualified to try a capital case.[4] (Doc. 32 at 138–57.) Having reviewed these allegations, the Court concludes that the claims, whether exhausted or not, can be resolved on the state court record, including the trial transcript. Evidentiary development is not necessary. *See, e.g.*, *Beardslee*, 358 F.3d at 585 (finding evidentiary hearing not

---

[4] Roseberry alleges, for example, that trial counsel performed ineffectively by failing to protect his right to a speedy trial, failing to perform an adequate pretrial investigation, failing to secure necessary experts, failing to supervise the defense team, performing ineffectively during jury selection and alienating the jurors, failing to object to evidence, failing to object to prosecutorial misconduct, failing to adequately examine witnesses, failing to move to withdraw from representation, failing to maintain a relationship with Roseberry, and failing to adequately object to jury instructions. (Doc. 32 at 138–57.)

warranted on claim of ineffective assistance based on counsel's failure to object to prosecutorial misconduct because "[t]he relevant facts . . . involve prosecutorial comments entered directly into the court's record, leaving no disputed facts at issue"); *Totten*, 137 F.3d at 1176. There are no disputed facts about these aspects of counsel's performance.

Roseberry also alleges that trial counsel performed ineffectively at sentencing, principally by failing to offer additional, more powerful, mitigating evidence of his deprived upbringing and his compromised cognitive state at the time of the crimes. According to Roseberry, a constitutionally sufficient sentencing stage performance would have resulted in presentation of evidence that he suffered from "vascular dementia at the time of the crime." (Doc. 68 at 32.)

> a.     Additional background

For the mitigation phase of sentencing, trial counsel retained Jack Brown, a retired probation officer, and Dr. Virginia Conner, a neuropsychologist. Brown, who had no training as a mitigation specialist in capital cases, testified that he was asked to gather "[a]ll the background information that can be found—medical, educational, employment, marital." (RT 6/4/03 pm, at 17.) Brown met with Roseberry four times. (*Id.* at 18.) He interviewed family members, including the first of Roseberry's ex-wives, his oldest daughter, and his daughter's husband, as well as a financial officer who worked for Roseberry's asbestos removal company and Roseberry's childhood best friend. (*Id.* at 19–20, 26, 31–32, 34.) Brown was unable to reach Roseberry's second and third wives. (*Id.* at 29.) Brown also obtained Roseberry's Social Security file and medical records from "about a dozen doctors and institutions" based on information provided by Roseberry. (*Id.* at 24.) Counsel provided Brown with medical releases signed by Roseberry. (*Id.*)

At the mitigation hearing, Brown testified that Roseberry's background was "average." (*Id.* at 19.) Although his family was "relatively poor," Roseberry was not aware "he was poor at the time." (*Id.*) Brown testified that two of Roseberry's children had died in infancy. (*Id.*) He testified that Roseberry was a hard worker who had owned

a successful asbestos removal business. (*Id.* at 20–21.) He explained that Roseberry was now disabled and unable to work due to emphysema. (*Id.* at 23.) Brown also testified about Roseberry's other ailments: Roseberry had a stent implanted in his artery in 2000; he had prostate surgery in 1999; and he had been diagnosed with adult onset diabetes. (*Id.* at 25–27, 39.) Roseberry's first wife and daughter told Brown that Roseberry had been hit in the head by a steel bar at work. (*Id.* at 28–29.)

Roseberry's oldest daughter and son-in-law told Brown that Roseberry was a very good father and a "fantastic person." (*Id.* at 32.) Roseberry's childhood friend told Brown that Roseberry was a "nice guy," "not a fighter," a "hard worker," and "easy to get along with." (*Id.* at 35.) Brown noted that Roseberry did not have a criminal history. (*Id.* at 39–40.) Roseberry's first wife and son-in-law told Brown that Roseberry liked to gamble. (*Id.* at 36.)

Brown testified that Roseberry's memory seemed to be getting worse over the course of their interviews. (*Id.* at 33–34.) He noted that Roseberry's affect was flat, but he cried when discussing the deaths of his young children. (*Id.* at 33.)

Dr. Conner, the neuropsychologist, testified that she first performed an intake interview with Roseberry to determine "the context of [his] life," including the presence of any developmental disorders, hyperactivity, a personality disorder, oppositional defiance, or a conduct disorder. (*Id.* at 70.) She also conducted a record review and wrote a report detailing the materials she reviewed and summarizing her findings. (*Id.* at 71.) Dr. Conner tested Roseberry's IQ, which she measured at 108, and his memory. (*Id.* at 71–72, 77.) She also administered a personality inventory and psychopathy checklist to rule out personality disorders or psychopathology. (*Id.* at 72–73, 88.)

Dr. Conner concluded that Roseberry suffered from "mild impairment" involving "frontal lobe functioning." (*Id.* at 77.) This impairment would affect his judgment, memory, and motor skills. (*Id.*)

Dr. Conner discussed a number of risk factors that could have contributed to Roseberry's impairment, including two head injuries. (*Id.*) She testified that "according to medical history," Roseberry had fallen from a barn and experienced loss of

consciousness with three hours of antegrade amnesia. (*Id.* at 78.) She also noted the injury Roseberry had suffered at work, which resulted in brief loss of consciousness, disorientation, and "typical head injury sequelae." (*Id.*) Dr. Conner testified that the injury "wasn't enough that it was going to drastically make an impairment that he couldn't function," but it was "one neurological risk factor." (*Id.*) Diabetes was another risk factor because it affects blood flow to the brain. (*Id.*) Dr. Conner testified that Roseberry had suffered two diabetic comas. (*Id.* at 80.) Finally, Dr. Conner stated that Roseberry's high blood pressure and sleep apnea were additional risk factors for brain impairment. (*Id.* at 80–81.)

Roseberry's counsel also presented videotaped statements from his mother, daughter, and son-in-law, and a letter from a friend. These witnesses offered humanizing information showing that Roseberry was a good father and father-in-law and praising him as kind, generous, and a man of integrity. The videotaped witnesses also discussed Roseberry's various ailments and head injuries.

During the PCR proceedings, counsel raised a claim of ineffective assistance of counsel at sentencing, challenging counsel's performance with respect to the testimony of Brown and Dr. Conner. (Doc. 46-2, Ex. RRRRR at 36–39.) PCR counsel ultimately conceded he could not establish prejudice; the PCR court agreed, denying the claim as meritless. (Doc. 46-4, Ex. HHHHHHH at 6–7.)

b.    Analysis

Roseberry seeks to expand the record with expert reports. Two of the reports are from experts retained by PCR counsel. In a report dated April 19, 2012, Dr. Barry Morenz, a psychiatrist, diagnosed Roseberry with cognitive disorder not otherwise specified ("NOS"), depressive disorder NOS, anxiety disorder NOS, and pathological gambling; personality disorder NOS with paranoid and narcissistic features; and high blood pressure, sleep apnea, diabetes, angina, and prostate problems. (Doc. 62-5, Ex. 205.) Dr. Morenz also opined that due to these mental and physical difficulties, Roseberry was unable to assist in his "appeals." (*Id.*)

Dr. Alex Hishaw, a neuropsychiatrist, examined Roseberry and prepared a report dated June 28, 2011. (*Id.*, Ex. 206.) Roseberry underwent an EEG and an MRI. The EEG was normal. (*Id.* at 4.) The MRI revealed "no evidence of mass or mass effect, mild age related cerebral volume loss, areas of T2 prolongation in the deep periventricular white matter that was felt to represent diffuse microangiopathic changes, and no areas of abnormal enhancement." (*Id.*) Dr. Hishaw noted that Roseberry experienced issues with fatigue and concentration. He found no "underlying dementing process such as Alzheimer's" and no "difficulties in other areas of cognition such as language, visuospatial orientation, or frontal/executive function." (*Id.* at 5.) Dr. Hishaw acknowledged Roseberry's "history of several head injuries," but noted that he was never hospitalized and never suffered a sustained period of unconsciousness "and so at the most may have experienced mild traumatic brain injuries in the past." (*Id.*) The impacts the injuries "might have had on his current cognition are unknown." (*Id.*) Dr. Hishaw concluded, "I do not find significant reason for direct neurologically associated cognitive concern." (*Id.* at 6.)

Roseberry also seeks to expand the record with a report from Dr. Robert Heilbronner, a neuropsychologist, dated February 17, 2017, and a letter dated March 10, 2017, from Dr. Erin Bigler, another neuropsychologist, who reviewed the brain imaging and neuropsychological studies performed on Roseberry. (Doc. 62, Ex's 207, 209.) Drs. Heilbronner and Bigler agree that "Roseberry had compromised neuropsychological function at the time of the crimes." (Doc. 62, Ex. 209 at 6.) They base their conclusion on neuropsychological test results as well as information provided by family members describing changes in Roseberry's behavior around the time of the crimes, including increased agitation and anxiety, restlessness, paranoia, susceptibility to the influence of others, and out-of-control gambling. (*Id.*) Although Heilbronner and Bigler did not rule out head trauma as the cause of the decline in Roseberry's brain function, Bigler opined that the "the imaging reflects more of a neurodegenerative state consistent with vascular pathology or progressive neurodegeneration." (*Id.*)

In addition, Roseberry seeks to expand the record with declarations from family members and acquaintances who attest that he grew up in a poor family, that his health was bad, that his mental status had been in decline and his behavior had changed around the time of the crimes, and that he had a serious gambling problem. (Doc. 57, Ex's 7–34.) The declarants also state that their belief Roseberry was either too timid or too smart to commit such a violent and "dumb" crime. (*Id.*, *see, e.g.*, Ex's 16, 17, 23.)

Having reviewed these materials and the other documents with which Roseberry seeks to expand the record in support of his claims of ineffective assistance of counsel at sentencing, the Court concludes that additional evidentiary development is unnecessary for the Court to address the merits of the allegations. The Court will expand the record to include the materials relevant to the claim. These include Exhibits 1–34, 90–125, 129–34, and 204–10. With these exhibits, the record is sufficient for the Court to assess, under both prongs of *Strickland*, Roseberry's challenges to counsel's investigation and presentation of mitigating evidence, including evidence of Roseberry's neuropsychological status at the time of the crimes. The Court denies Roseberry's request to expand the record with other materials and denies his request for discovery and an evidentiary hearing.

### 2.    Claim 26

Roseberry alleges numerous instances of ineffective assistance of appellate counsel (Doc. 32 at 169–179), two of which were raised by PCR counsel and denied on the merits.[5]  (Doc. 46-2, Ex. RRRRR at 4–19; Doc. 46-4, Ex. HHHHHHH at 3–5). Respondents have waived default with respect to the other allegations.[6]

---

[5] PCR counsel argued that appellate counsel performed ineffectively by failing to raise a claim that the jury was required to make the *Enmund/Tison* findings and by failing to challenge the trial court's "nexus" jury instruction concerning mitigating evidence. (Doc. 46-2, Ex. RRRRR at 4–19.)

[6] The Court notes that these unexhausted and defaulted claims would have been barred from review if Respondents had not waived the procedural default defense. *Martinez* does not apply to claims of ineffective assistance of appellate counsel. In *Davila v. Davis*, 137 S. Ct. 2058 (2017), the Supreme Court declined to extend *Martinez* to "allow a federal court to hear a substantial, but procedurally defaulted, claim of ineffective assistance of appellate counsel when a prisoner's state postconviction counsel provides ineffective assistance by failing to raise that claim." *Id.* at 2065.

Evidentiary development of Claim 26 is not warranted because the record is complete with respect to appellate counsel's performance. *See Landrigan*, 550 U.S. at 474; *Totten*, 137 F.3d at 1176. "When a claim of ineffective assistance of counsel is based on failure to raise issues on appeal . . . it is the exceptional case that could not be resolved on an examination of the record alone." *Gray v. Greer*, 800 F.2d 644, 647 (7th Cir. 1986). This is not one of those "exceptional cases." Roseberry has not identified any disputed facts relevant to his appellate ineffective assistance claims. *See Beardslee*, 358 F.3d at 585.

3.      Claim 28

Roseberry alleges that PCR counsel performed ineffectively. (Doc. 32 at 180.) Evidentiary development is denied with respect to this claim. PCR counsel's performance is at issue only to the extent it serves as cause under *Martinez* for the default of Roseberry's ineffective assistance of trial counsel claims. Because Respondents have waived the default of those claims, additional evidence regarding PCR counsel's performance is irrelevant.

**III.    CONCLUSION**

Expansion of the record is appropriate with respect to Roseberry's allegations of ineffective assistance of counsel at sentencing. His remaining requests for evidentiary development are denied.

Accordingly,

**IT IS ORDERED** denying in part Roseberry's motion for evidentiary development (Doc. 57) as set forth herein.

**IT IS FURTHER ORDERED** granting Roseberry's request to expand the record to include the following materials attached to his motion for evidentiary development (Doc. 57; *see* Docs. 57–62): Exhibits 1–34, 90–125, 129–34, and 204–10.

/ / /

/ / /

/ / /

**IT IS FURTHER ORDERED** dismissing Claim 45 without prejudice as premature.

Dated this 30th day of January, 2018.

_____

Neil V. Wake
Senior United States District Judge