1    **WO**

2

3

4

5

6                 IN THE UNITED STATES DISTRICT COURT

7                    FOR THE DISTRICT OF ARIZONA

8

9    Homer Ray Roseberry,                  No. CV-15-01507-PHX-NVW

10              Petitioner,                **ORDER**

11   v.
                                           DEATH PENALTY CASE
12   Charles L. Ryan, et al.,

13              Respondents.

14

15

16                          **Table of Contents**

17   I.     BACKGROUND ............................................................................  1

18   II.    AEDPA .......................................................................................  3

19   III.   DISCUSSION ..............................................................................  3

20          A.    Claims 1 and 2 ...............................................................  4

                  1.    Claim 1 ..................................................................  4
21
                  2.    Claim 2 ..................................................................  7
22          B.    Unexhausted, Defaulted Claims ....................................  8

            C.    Exhausted Claims ...........................................................  9
23
                  1.    Claim 11 ................................................................  9
24
                  2.    Claim 20 ................................................................  11
25                3.    Claim 24 (in part) .................................................  12

                        a.    Claim 24(A)(2) .............................................  12
26
                        b.    Claim 24(A)(5) .............................................  13
27                      c.    Claim 24(G) .................................................  14

28                      d.    Claim 24(H) .................................................  16

                              -i-

|   |   |   | e. | Claim 24(N)............................................................... | 17 |

D.     Ineffective Assistance of Counsel Claims ......................................... 18

     1.    Claim 25: Ineffective assistance of trial counsel...................... 19

         a.    Trial counsel repeated various prejudicial deficiencies throughout their representation ........................................... 21

         b.    Trial counsel performed deficiently and prejudicially in investigating, presenting, and litigating Roseberry's case before trial ...................................................................... 30

         c.    Trial counsel performed deficiently and prejudicially during jury selection................................................................ 32

         d.    Trial counsel performed deficiently and prejudicially during the guilt/innocence phase of Roseberry's trial. 36

         e.    Trial counsel performed deficiently and prejudicially during the sentencing phases of Roseberry's trial ............ 42

            3(a)    Evidence presented at sentencing ........................... 43

            3(b)    New Evidence ....................................................... 45

            3(c)    Analysis................................................................... 47

            3(d)    Conclusion .............................................................. 51

         f.    Conclusion............................................................................ 53

     2.    Claim 26: Ineffective assistance of appellate counsel.............. 54

         a.    Causal-nexus and *Enmund/Tison* claims.......................... 55

         b.    Trial court errors ................................................................. 56

         c.    Failure to challenge Arizona's death penalty statute ......... 57

         d.    Failure with respect to the record and the case file............ 58

         e.    Appellate counsel performed ineffectively throughout his representation ..................................................................... 58

     3.    Claim 28: ineffective assistance of PCR counsel..................... 58

E.     Claims Challenging Arizona's Death Penalty Statute ....................... 59

     1.    Claim 29 ..................................................................................... 59

     2.    Claim 30 ..................................................................................... 59

     3.    Claim 31 ..................................................................................... 59

     4.    Claim 32 ..................................................................................... 60

     5.    Claim 33 ..................................................................................... 60

     6.    Claim 34 ..................................................................................... 60

     7.    Claim 35 ..................................................................................... 61

     8.    Claim 36 ..................................................................................... 62

     9.    Claim 37 ..................................................................................... 62

|  |  | 10. | Claim 38 ........................................................... | 63 |
|  |  | 11. | Claim 39 ........................................................... | 63 |
| IV. | CERTIFICATE OF APPELABILITY ......................................... |  |  | 63 |
| V. | CONCLUSION............................................................ |  |  | 64 |

1    Before the Court is the Petition for Writ of Habeas Corpus filed by Homer

2    Roseberry, an Arizona death row inmate. (Doc. 32.) Respondents filed an answer to the

3    petition and Roseberry filed a reply. (Docs. 45, 49.) For the reasons set forth below, and

4    based on the Court's review of the briefings and the entire record herein, the petition is

5    denied.

6    **I. BACKGROUND**

7    The Arizona Supreme Court, in *State v. Roseberry*, 210 Ariz. 360, 363, 111 P.3d

8    402, 405 (2005), summarized the facts underlying Roseberry's convictions and sentences

9    as follows.

10    In 1997, Roseberry and his wife, Diane, met members of a marijuana-smuggling

11    ring known as the Pembertons. In late 1998 and early 1999, Roseberry was paid by the

12    Pembertons to transport marijuana in his motorhome from Arizona to Michigan.

13    In early October of 2000, Roseberry agreed to transport more than 1,000 pounds of

14    marijuana. When Roseberry arrived in Phoenix to pick up the load, the Pembertons

15    informed him that Fred Fottler would accompany him on the trip. Several large duffle bags

16    of marijuana were then loaded into the motorhome.

17    On October 20, 2000, Roseberry set off from Phoenix. Pursuant to a scheme he

18    devised with his friend Charles Dvoracek, Dvoracek traveled to Wickenburg, Arizona,

19    where he was supposed to intercept and "steal" the motorhome and marijuana while

20    Roseberry and Fottler were eating at a Denny's restaurant. In the early morning hours of

21    October 21, 2000, Dvoracek parked his truck on the side of the road and waited for the

22    motorhome to stop at Denny's. Instead of stopping at the restaurant, however, Roseberry

23    drove back onto the highway and continued north toward his home in Nevada.

24    Dvoracek followed the motorhome, which Roseberry soon pulled over onto the

25    shoulder of the road. As Dvoracek pulled in behind, he heard two pops. Roseberry stepped

26    out of the motorhome and told Dvoracek that he had "shot the guy" the Pembertons had

27    sent to accompany him on the drug run.

28    Roseberry shot Fottler in the back of the head. Fottler was still making gurgling

-1-

noises, so Roseberry returned to the motorhome and shot him again. Roseberry and Dvoracek then wrapped Fottler's body in a blanket and dumped it into a gully on the side of the road.

As Roseberry drove through Arizona, he threw his gun out the window of the motorhome. Roseberry and Dvoracek stopped in Kingman, Arizona, to remove other evidence of the crime. They took a blood-stained sheet from the motorhome and threw it over a fence. They also buried Fottler's wallet and moved one of the duffle bags of marijuana from the motorhome to Dvoracek's truck so Dvoracek could sell the drugs to raise money in case it became necessary to bail Roseberry out of jail.

They arrived at Roseberry's home in Henderson, Nevada, on October 21, 2000, and put the motorhome and drugs into storage. Later that day, Roseberry confided to his wife that he killed Fottler so he could steal the marijuana and sell it himself. Roseberry told her that his story was going to be that "some Mexicans" with guns were in the motorhome and had killed Fottler while Roseberry was out of the vehicle.

Diane Roseberry called her brother, Otis Bowman, and asked him to fly in from Indiana, which he did on October 22, 2000. Two drug dealers flew in with Bowman. They agreed to purchase about 300 pounds of marijuana, which Bowman later transported to Ohio in Roseberry's motorhome. Roseberry and Dvoracek split the money from the sale.

Fottler's body was soon discovered. Investigative leads from United States Customs agents led Yavapai County Deputy Sheriffs to Roseberry, whose motorhome the customs agents had observed while surveilling a Tucson stash house.

Roseberry was tried and convicted of first-degree murder and drug offenses. The jury then determined that the pecuniary gain aggravating factor, A.R.S. § 13–703(F)(5), had been proved. In the penalty phase, held six months later before the same jury, Roseberry presented mitigation evidence in support of five statutory and five non-statutory mitigating circumstances. The jury determined that the mitigation evidence was not sufficiently substantial to warrant leniency and returned a verdict of death for the murder. The court sentenced Roseberry to death.

On direct appeal, the Arizona Supreme Court affirmed the convictions and sentences. *Roseberry*, 210 Ariz. 360, 111 P.3d 402. Roseberry filed a petition for post-conviction relief ("PCR") in April 2012. The trial court denied the petition and the Arizona Supreme Court denied Roseberry's petition for review. *State v. Roseberry (Roseberry II)*, 237 Ariz. 507, 353 P.3d 847 (2015).

On December 22, 2015, Roseberry filed a sealed petition for writ of habeas corpus in this Court. (Doc. 23.) He filed an unsealed petition on August 8, 2016. (Doc. 32.) On January 20, 2018, the Court denied in part and granted in part Roseberry's request for evidentiary development. (Doc. 70.)

## II. AEDPA

Federal habeas claims are analyzed under the framework of the Antiterrorism and Effective Death Penalty Act ("AEDPA"). Under the AEDPA, a petitioner is not entitled to habeas relief on any claim adjudicated on the merits in state court unless the state court's adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in state court. 28 U.S.C. § 2254(d).

The Supreme Court has emphasized that "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Williams v. Taylor*, 529 U.S. 362, 410 (2000). Under § 2254(d), "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). The burden is on the petitioner to show "there was no reasonable basis for the state court to deny relief." *Id.* at 98.

## III. DISCUSSION

Roseberry's petition lists 47 claims.[1] Some of the claims contain as many as 50

---

[1] Claims 18, 23, and 46 have been withdrawn. The Court previously dismissed Claim 45 without prejudice. (Doc. 70 at 12.)

subclaims. All told, Roseberry alleges that his state court proceedings were plagued by more than 150 separate constitutional violations. He exhausted 30 of these claims in state court.

## A. Claims 1 and 2

In Claim 1, Roseberry alleges that his rights were violated by the trial court's erroneous instruction that the jury could not consider mitigating evidence if Roseberry failed to prove a causal connection between the evidence and the crime. (Doc. 32 at 41.) In Claim 2, Roseberry alleges that the trial court unconstitutionally "usurp[ed] the jury's role to make the *Enmund/Tison* finding." (*Id.* at 53.)

Roseberry did not appropriately raise these claims on appeal in state court. He contends that the ineffective performance of appellate counsel excuses their default.[2] (Doc. 32 at 41, 53.) The Court will deny the claims as meritless, irrespective of their procedural status. *See* 28 U.S.C. § 2254(b)(2).

### 1. Claim 1

The trial court instructed the jury at sentencing that if Roseberry "fails to prove causation between a proposed mitigating circumstance and the crime, the circumstance cannot be considered mitigating." (RT 6/5/03, p.m., at 6–7.) This instruction was in error. The sentencer in a capital case may "not be precluded from considering, *as a mitigating factor*, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." *Eddings v. Oklahoma*, 455 U.S. 104, 110 (1982) (quoting *Lockett v. Ohio*, 438 U.S. 586, 604 (1978) (plurality opinion)); *see Tennard v. Dretke*, 542 U.S. 274, 283 (2004) (finding unconstitutional a screening test that required a causal nexus between mitigating evidence and the offense).

Respondents argue that this error was corrected by the Arizona Supreme Court's independent review of Roseberry's sentence.[3] (Doc. 45 at 24.) The Court agrees. On

---

[2] During his PCR proceedings, Roseberry alleged that appellate counsel performed ineffectively by failing to raise the claims on direct appeal. (Doc. 46-2, Ex. RRRRR.)

[3] For cases with offenses that were committed before Aug. 1, 2002, the Arizona

direct appeal, the Arizona Supreme Court reviewed the aggravating and mitigating factors and concluded that "the evidence of mitigation is not sufficiently substantial to call for leniency." *Roseberry*, 210 Ariz. at 374, 111 P.3d at 416. The court described the mitigating circumstances as "either weak or non-existent." *Id.*

Furthermore, on review of the PCR court's ruling denying relief on Roseberry's claim of ineffective assistance of appellate counsel, the Arizona Supreme Court "clarif[ied] that our independent review of Roseberry's death sentence considered all the mitigation evidence presented, without requiring a causal connection to the crimes, and we found it not sufficiently substantial to call for leniency." *Roseberry II*, 237 Ariz. at 508, 353 P.3d at 848. With respect to the erroneous jury instruction, the court explained:

> As to mitigation, Roseberry was not precluded from presenting any evidence. At the penalty phase trial, he presented evidence of five statutory and five non-statutory mitigating factors. The five statutory mitigating factors presented were causally connected to the crime. . . . The erroneous instruction would not have prevented the jury from considering these mitigating factors because of their close causal connection to the crimes.
>
> Roseberry also presented evidence of five non-statutory mitigating factors. . . . This Court considered all mitigation evidence presented without regard to its connection to the crime (except as it might have affected the weight afforded to the evidence) and concluded on independent review that the mitigation evidence was not sufficiently substantial to warrant leniency. *Roseberry*, 210 Ariz. at 373–74 ¶¶ 77–79, 111 P.3d at 415–16.

*Id.* at 510, 353 P.3d at 850. The court concluded that "any deficiency in appellate counsel's performance was cured by this Court's independent review." *Id.*

This type of independent reweighing performed by the Arizona Supreme Court is constitutionally permissible in cases of capital sentencing error. *See Clemons v. Mississippi*, 494 U.S. 750, 753–54 (1990) (holding that appellate courts are able to fully consider mitigating evidence and are constitutionally permitted to affirm a death sentence based on independent re-weighing despite any error at sentencing); *Richmond v. Lewis*,

---

Supreme Court independently reviewed the jury's findings of aggravating and mitigating circumstances and the propriety of the death sentence. A.R.S. § 13-703.04 (13-755).

506 U.S. 40, 49 (1992) (holding that a state appellate court can cure a sentencing error in a capital case when "the state appellate court . . . actually perform[s] a new sentencing calculus"); *see also Styers v. Ryan*, 811 F.3d 292 (9th Cir. 2015) (affirming independent review by Arizona Supreme Court after *Eddings* error). Moreover, contrary to Roseberry's argument, *Eddings* error is not structural, and is subject to harmless-error review. *McKinney v. Ryan*, 813 F.3d 798, 821 (9th Cir. 2015).

Roseberry argues that the Arizona Supreme Court's independent review incorporated causal-nexus error. Citing *McKinney*, 813 F.3d at 813, Roseberry asserts that "[d]espite the Arizona Supreme Court's token statement otherwise (ten years later), at the time of Mr. Roseberry's direct appeal in 2005 (when the court conducted its 'independent review'), the Arizona Supreme Court regularly applied its own causal-nexus requirements." (Doc. 32 at 47.)

In *Greenway v. Ryan*, 866 F.3d 1094, 1095–96 (9th Cir. 2017), *cert. denied*, 138 S. Ct. 2625, the court explained, "We said in *McKinney* that the Arizona courts had 'consistently' applied the causal-nexus test. . . . We did not say, however, that Arizona had always applied it." *See Apelt v. Ryan*, 878 F.3d 800, 839–40 (9th Cir. 2017), *cert. denied*, --- S. Ct. ----, 2019 WL 1172280; *Martinez v. Ryan*, 926 F.3d 1215, 1234 (9th Cir. 2019).

In Roseberry's case, there is no indication that the Arizona Supreme Court applied a casual-nexus test. The opinion "on its face . . . does not expressly exclude any mitigation evidence or claim on the ground that it lacked causal relationship to the commission of the crime." *Greenway*, 866 F.3d at 1097. The court "did not reject any mitigating factor, as a matter of law, on the theory that it was not related to the commission of the crime," *id.*, or use any of the language found to be problematic in *McKinney*'s discussion of cases where the Arizona Supreme Court improperly applied a causal-nexus test to mitigating evidence. *McKinney*, 813 F.3d at 813–17, 824–26. Roseberry's contention that the Arizona Supreme Court's independent review was tainted by causal-nexus error is unsupported.

Finally, contrary to Roseberry's argument, the independent review carried out the Arizona Supreme Court did not violate *Ring v. Arizona*, 536 U.S. 584 (2002). *Ring* held

that Sixth Amendment required that a jury, not a judge, find the aggravating circumstance necessary for imposition of death penalty. *Id.* at 609. Here, a jury found that the pecuniary gain aggravating factor had been proved, making Roseberry eligible for a death sentence under Arizona law. The instructional error did not implicate the holding in *Ring*.

The independent review carried out by the Arizona Supreme Court cured the causal-nexus instructional error. Claim 1 is denied.

## 2. Claim 2

The jury convicted Roseberry of first-degree murder but did not come to a unanimous decision regarding the theory of first-degree murder, with 10 jurors finding that the State had proven only felony murder. (ROA 163.)

Under *Tison v. Arizona*, 481 U.S. 137 (1987), and *Enmund v. Florida*, 458 U.S. 782 (1982), the trier of fact, in death penalty cases based on felony-murder, is required to make a finding that the defendant was a major participant in the felony committed and was recklessly indifferent to human life. *Tison*, 481 U.S. at 158. In Roseberry's case, the trial court made that finding, contrary to Arizona law.[4] (ROA 213.)

As Respondents note, the United States Supreme Court has never held that the *Enmund/Tison* determination must be made by the jury. A finding of the requisite culpability may be made by a jury, the trial judge, or an appellate court. *Cabana v. Bullock*, 474 U.S. 376, 392 (1986) ("[T]he Eighth Amendment does not require that a jury make the findings required by *Enmund*."), *overruled on other grounds by Pope v. Illinois*, 481 U.S. 497 (1987). Roseberry's federal constitutional rights were not violated.

In addition, Roseberry was not prejudiced when the trial court made the *Enmund/Tison* finding. The evidence was overwhelming, as the trial court found (ROA 213), that it was Roseberry who shot and killed Fottler. *See also Roseberry*, 210 Ariz. at 369, 111 P.3d at 411 ("The jury found beyond a reasonable doubt that Roseberry was motivated to kill Fottler by the desire for pecuniary gain, and that finding is well

---

[4] Pursuant to A.R.S. § 13-703.01(P), "The trier of fact shall make all factual determinations required . . . to impose a death sentence."

supported."); *Roseberry II*, 237 Ariz. at 510, 353 P.3d at 850 ("[T]he evidence was overwhelming that Roseberry killed Fottler so that he could steal the load of marijuana."). Claim 2 is denied.

## B.    Unexhausted, Defaulted Claims

Roseberry did not raise the following claims in state court: Claims 3, 4, 6–10, 12–17, 19, 21, 22, 24 (in part), 27, and 40–47.  The claims are procedurally defaulted. Roseberry contends their default is excused by the ineffective assistance of appellate or PCR counsel.

*Martinez v. Ryan*, 566 U.S. 1 (2012), held that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial."  566 U.S. at 8.  *Martinez* applies only to claims of ineffective assistance of trial counsel; it has not been expanded to other types of claims.  *See Pizzuto v. Ramirez*, 783 F.3d 1171, 1177 (9th Cir. 2015) (explaining that the Ninth Circuit has "not allowed petitioners to substantially expand the scope of *Martinez* beyond the circumstances present in *Martinez*"); *Hunton v. Sinclair*, 732 F.3d 1124, 1126–27 (9th Cir. 2013) (denying petitioner's argument that *Martinez* permitted the resuscitation of a procedurally defaulted *Brady* claim, holding that only the Supreme Court could expand the application of *Martinez* to other areas); *see also Davila v. Davis*, 137 S. Ct. 2058, 2062–63 (2017) (explaining that the *Martinez* exception does not apply to claims of ineffective assistance of appellate counsel).

None of these defaulted claims alleges ineffective assistance of trial counsel. Therefore, the failure of PCR counsel to raise the claims does not excuse their default under *Martinez*.  In addition, before ineffective assistance of appellate counsel may be used as cause to excuse a procedural default, the particular ineffective assistance allegation must first be exhausted in state court as an independent claim.[5]  *See Edwards v. Carpenter*, 529

---

[5] Respondents expressly waived the affirmative defense of procedural default with respect to all of Roseberry's claims of ineffective assistance of appellate counsel.  (Doc. 45 at 105, 151.)  The Court finds that this waiver does not apply to Roseberry's assertions that the deficient performance of appellate counsel serves as cause to excuse the default of

U.S. 446, 453 (2000) ("an ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted"); *Murray v. Carrier*, 477 U.S. 478, 489–90 (1986) (explaining that counsel's ineffectiveness in failing to preserve a claim for review in state court can excuse a procedural default only if that ineffectiveness itself constitutes an independent constitutional claim); *Tacho v. Martinez*, 862 F.2d 1376, 1381 (9th Cir. 1988).

Roseberry did not raise these allegations of ineffective assistance of appellate counsel in his PCR petition. Therefore, the failure of appellate counsel to raise these claims does not excuse their default.

Claims 3, 4, 6–10, 12–17, 19, 21, 22, 24 (in part), 27, and 40–47 remain procedurally defaulted and are barred from federal review. [6]

## C.   Exhausted Claims

Claims 11, 20, and parts of Claim 24 were denied on the merits by the Arizona Supreme Court on direct appeal.

### 1.   Claim 11

In Claim 11, Roseberry alleges that "[o]n information and belief, jurors failed to consider any of the mitigating circumstances proven by a preponderance of the evidence." (Doc. 32 at 81.) In support of this allegation, Roseberry argues that the jury was improperly instructed. (Doc. 32 at 81–83; *see* Doc. 49 at 45–49.) He also asserts that the jurors did

---

non-ineffective assistance of appellate counsel claims. As to these latter claims, Respondents have explicitly invoked the defense of Roseberry's procedural default by asserting that the claims are defaulted and that Roseberry has not demonstrated cause to excuse the default. (*See, e.g.*, Doc. 45 at 27.)

[6] In Claim 3, Roseberry alleges violations under *Brady v. Maryland*, 373 U.S. 83 (1963). (Doc. 32 at 56.) As the Court previously noted, the claim is speculative and conclusory. (Doc. 70 at 10–11.) The claim is denied as meritless on that ground as well as being barred from federal review.

In Claim 5, Roseberry alleges that he is "currently [] incompetent to assist counsel." (Doc. 32 at 60.) This claim, raised for the first time here, is not cognizable on habeas review as it does not challenge the legality of Roseberry's conviction or sentence. *See* 28 U.S.C. § 2254(a).

not understand the concept of mitigation because of trial counsel's poor presentation and that some jurors were not open to considering mitigation because of counsel's poor performance during jury selection. (*Id.*)

The Arizona Supreme Court denied this claim. *Roseberry*, 210 Ariz. at 373, 111 P.3d at 415. The court first rejected Roseberry's argument "that because the trial judge found the three mitigating factors—lack of prior convictions, medical problems, and childhood difficulties—when sentencing Roseberry for the drug offenses, the jury must have failed to consider these factors for the murder offense." The court explained:

> Roseberry does not say why he believes the jury did not consider any mitigating evidence. Because there is no special verdict on mitigation, we cannot tell whether the jury failed to find the mitigating factors, or whether it did find some or all of them to exist, but concluded that they did not outweigh the aggravating factor of pecuniary gain. . . . That the judge may have found certain mitigating factors does not mean that the jury had to find the same factors, as long as the jury's findings were supported by reasonable evidence. Roseberry has not shown that any jury finding was unsupported, nor has he shown any failure by the jury to perform its duty. Indeed, he has not shown that the jury did not find the same factors the trial judge found.

*Id.* (footnote omitted). The court then explained that the jurors were properly instructed:

> [T]he record shows that they were comprehensively instructed to consider all of the evidence presented at the trial, including "factors in fairness and mercy [that] may support a sentence other than death." We presume that the jury followed those instructions.

*Id.* (citations omitted).

Finally, the court noted that "the penalty verdict form, signed by the jury foreman and read in open court, states that the jury 'considered all the facts and circumstances of this case.'" *Id.*

Roseberry does not attempt to argue that the Arizona Supreme Court's decision was contrary to or an unreasonable application of clearly established law. (*See* Doc. 31 at 81–83.) As the court found, there was no basis to conclude the jurors did not consider all the evidence at sentencing, especially when the verdict form said that they did. *See Richardson v. Marsh*, 481 U.S. 200, 211 (1987) (explaining that jurors are presumed to follow their

instructions).  Roseberry fails to meet his burden of showing "there was no reasonable basis for the state court to deny relief."  *Richter*, 562 U.S. at 98.

Moreover, as already noted, any error was corrected by the independent reweighing carried out by the Arizona Supreme Court.  Claim 11 is denied.

### 2.      Claim 20

Roseberry alleges that there was insufficient evidence to prove the pecuniary gain aggravating factor.  (Doc. 32 at 99.)  The Arizona Supreme Court denied this claim, holding that, "Reasonable evidence clearly supports the jury's finding that the receipt of pecuniary gain served as a motive, cause, or impetus for the murder of Fottler."  *Roseberry*, 210 Ariz. at 369, 111 P.3d at 411.  The court explained:

> [T]he evidence showed that Fottler was killed so that Roseberry could steal and sell the marijuana. . . .  Roseberry had admitted during the trial that he started transporting marijuana for the Pembertons because he needed the money.  Roseberry also told his wife and Dvoracek that he was going to make a lot of money by selling the marijuana himself after getting rid of Fottler.
>
> The pecuniary gain motive is further illustrated by the evidence that Roseberry and his co-conspirators wasted no time in setting up a deal to sell some of the marijuana.  Indeed, they called Bowman the very day Fottler was killed.  Later, Roseberry and Dvoracek arranged to have Berkowitz transport marijuana to Ohio, and they split the proceeds of those sales.
>
> . . . Indeed, it is difficult to imagine any other reason for Roseberry to kill Fottler.  Roseberry admitted that he had met Fottler only once before the ill-fated drug run, and that meeting lasted just a few minutes.  There was no evidence of animus toward Fottler and no evidence that hostility erupted between the two men during their motorhome trip.

*Id.*

Habeas review of a state court's application of an aggravating factor "is limited, at most, to determining whether the state court's finding was so arbitrary or capricious as to constitute an independent due process or Eighth Amendment violation."  *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).  In making that determination, the reviewing court must inquire "whether, after viewing the evidence in the light most favorable to the

prosecution, *any* rational trier of fact could have found" that the factor had been satisfied. *Id.* at 781 (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

A finding that a murder was motivated by pecuniary gain for purposes of § 13–703(F)(5) must be supported by evidence that pecuniary gain was the impetus, not merely the result, of the murder. *See Moormann v. Schriro*, 426 F.3d 1044, 1054 (9th Cir. 2005); *see also State v. Cañez*, 202 Ariz. 133, 159, 42 P.3d 564, 590 (2002) (killing the victim and sole witness of a robbery is evidence of an intent to facilitate escape or hinder detection and provides sufficient evidence that the catalyst for the robbery was pecuniary gain), *supplemented by* 205 Ariz. 620, 74 P.3d 932 (2003), *and abrogation on other grounds recognized by McKinney*, 813 F.3d at 815–26. Killing for the purpose of financial gain is sufficient to establish the aggravator. *See State v. Walton*, 159 Ariz. 571, 588, 769 P.2d 1017, 1034 (1989).

A rational trier of fact could have determined, as the jury, the trial court, and the Arizona Supreme Court did, that Roseberry was motivated to murder Fottler by the desire for pecuniary gain. Roseberry suggests the possibility of other motives for the murder, such as his desire to protect his wife and family. (Doc. 32 at 101.) The existence of a less-persuasive alternative motive is not sufficient to show that no rational factfinder could have determined that the motive for the murder was pecuniary gain. *Jeffers*, 497 U.S. at 780.

Claim 20 is denied.

**3.      Claim 24 (in part)**

a.      Claim 24(A)(2)

Roseberry alleges that his due process rights were violated by the trial court's reasonable doubt instruction. (Doc. 32 at 108.) The court instructed the jury that, "Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt. . . . If, based upon your consideration of the evidence, you are firmly convinced that the defendant is guilty of a crime, you must find him guilty." (RT 12/18/02 at 151; *see* 12/20/02 at 30.) The Arizona Supreme Court, noting that it had upheld the instruction in previous cases, denied this claim. *Roseberry*, 210 Ariz. at 371, 111 P.3d at 412 (citing

*State v. Portillo*, 182 Ariz. 592, 898 P.2d 970 (1995)).

The jury instruction at issue is based on the pattern jury instruction on reasonable doubt adopted by the Federal Judicial Center ("FJC").  *See State v. Van Adams*, 194 Ariz. 408, 417–18, 984 P.2d 16, 25–26 (1999).  Roseberry has presented no United States Supreme Court authority in support of his challenge to the instruction.  To the contrary, Justice Ginsburg, in a concurring opinion, praised the FJC instruction as "clear, straightforward, and accurate," noting that it "surpasses others I have seen in stating the reasonable doubt standard succinctly and comprehensibly."  *Victor v. Nebraska*, 511 U.S. 1, 27 (1994) (Ginsburg, J., concurring).  Moreover, the Ninth Circuit has upheld language identical or substantially similar to the FJC's pattern instruction.  *See, e.g.*, *United States v. Artero*, 121 F.3d 1256, 1257–59 (9th Cir. 1997); *United States v. Velasquez*, 980 F.2d 1275 (9th Cir. 1992).  In rejecting this claim the Arizona Supreme Court did not unreasonably apply clearly established federal law.  Claim 24(A)(2) is denied.

### b.    Claim 24(A)(5)

Roseberry alleges that his rights were violated by a jury instruction that "limited consideration of impairment as a mitigating circumstance."  (Doc. 32 at 110.)  The trial court instructed the jury that the impairment, or diminished capacity, statutory mitigating circumstance, A.R.S. § 13-701(E)(2), existed only when "[t]he defendant's capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law was significantly impaired, but not so impaired as to constitute a defense to prosecution."  (RT 6/5/03, p.m., at 7.)  The Arizona Supreme Court denied the claim on the grounds of "invited error" because Roseberry did not object to the instruction and included the same "significant impairment" language in his requested jury instructions in the penalty phase.  *Roseberry*, 210 Ariz. at 369, 111 P.3d at 411.

The Arizona Supreme Court's application of the invited error rule is an independent and adequate procedural bar that precludes federal habeas review.  *See Leavitt v. Arave*, 383 F.3d 809, 832 (9th Cir. 2004) (explaining that where the state court clearly and expressly invokes the invited error doctrine, there is no reason to treat it differently from

-13-

other procedural bars); *Dreury v. Thaler*, 647 F.3d 535, 545 (5th Cir. 2011) (noting that invited error doctrine qualifies as state procedural bar); *Parker v. Champion*, 148 F.3d 1219, 1222 (10th Cir. 1998) (finding that state court's application of invited error doctrine precluded habeas relief).

In any event, the "significant impairment" instruction was not erroneous but tracked the language of the statutory mitigating circumstance.[7]

The court also instructed the jury that:

> In making the determination of mitigation you shall consider as a mitigating circumstance any factor or factors proffered by the defendant or the state that are relevant in determining whether to impose a sentence less than death, including any aspect of the defendant's character, propensities, lack of prior criminal history or record, any of the circumstances of the offense, and including but not limited, to [the statutory mitigating factors].

(RT 6/5/03, p.m., at 7.) This instruction clearly indicated that the jury could consider circumstances such as Roseberry's impairment as a non-statutory as well as a statutory mitigating circumstance. Claim 24(A)(5) is denied.

### c. Claim 24(G)

Roseberry alleges the trial court improperly struck jurors for cause based only on their "general objections to the death penalty." (Doc. 32 at 120–21.) The Arizona Supreme Court denied the claim. *Roseberry*, 210 Ariz. at 366–68, 111 P.3d at 408–10.

In *Witherspoon v. Illinois*, 391 U.S. 510 (1968), the Supreme Court held that a prospective juror may be excluded only if he indicates he is "irrevocably committed, before the trial has begun, to vote against the penalty of death regardless of the facts and circumstances that might emerge in the course of the proceedings." *Id.* at 522 n.21. The Court further explained that the exclusion of jurors for cause "simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction" violated the federal constitution. *Id.*

---

[7] Pursuant to A.R.S. § 13-701(E)(2), a mitigating circumstance exists where, "The defendant's capacity to appreciate the wrongfulness of the defendant's conduct or to conform the defendant's conduct to the requirements of law was significantly impaired, but not so impaired as to constitute a defense to prosecution."

A prospective juror's views on the death penalty may not be challenged for cause "unless those views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." *Adams v. Texas*, 448 U.S. 38, 45 (1980). Juror bias need not be established with "unmistakable clarity." *Wainwright v. Witt*, 469 U.S. 412, 424 (1985). "[A] juror who in no case would vote for capital punishment, regardless of his or her instructions, is not an impartial juror and must be removed for cause." *Morgan v. Illinois*, 504 U.S. 719, 728 (1992).

Roseberry does not offer support for his argument that the Arizona Supreme Court's decision was contrary to or based on an unreasonable application of clearly established federal law or was "unreasonable, and based on a record lacking in facts." (Doc. 32 at 121.) The claim is meritless.

The Arizona Supreme Court correctly stated the law regarding when a juror may be struck for cause based on his views about the death penalty. *Roseberry*, 210 Ariz. at 366, 111 P.3d at 408 (citing *Witherspoon*, 391 U.S. at 510, 514, and *Morgan*, 504 U.S. at 734 n.7).

The court then recounted each juror's statements during voir dire and determined that all of the dismissed "jurors were carefully questioned by the trial judge and defense counsel." *Id.* at 368, 111 P. 3d at 410. The court rejected Roseberry's argument that the jurors had voiced only general objections to the death penalty and determined that "all admitted that they would not follow the judge's instruction on the law and thus it was appropriate for the judge to dismiss them." *Id.*

A review of the record shows that the court's factual determinations about the questions asked and the jurors' answers during voir dire are correct. *Id.* at 366–68, 111 P.3d at 408–410. (*See* RT 12/4/02 at 66–67, 69–70, 81–90, 92–99; RT 12/5/02 at 22–24, 37–40, 44–49, 61–65.) The record amply demonstrates that the views of the dismissed prospective jurors would "prevent or substantially impair the performance of [their] duties as a juror." *Witt*, 469 U.S. at 424.

Claim 24(G) is denied.

### d.    Claim 24(H)

Roseberry alleges that the trial court "improperly or inadequately" instructed the alternate jurors.[8]  (Doc. 32 at 123.)  Specifically, he asserts that the trial court should have instructed the jurors, pursuant to Rule 18.5 of the Arizona Rules of Criminal Procedure, that they were to "begin deliberations anew."  (*Id.*)  The Arizona Supreme Court denied the claim.  *Roseberry*, 210 Ariz. at 372–73, 111 P.3d at 414–15.  The court explained:

> Roseberry next complains of the trial judge's failure to instruct the jury, as Rule 18.5(h) requires, to "begin deliberations anew."  The failure was logical, however, because no penalty phase deliberations had begun before Juror Twelve was seated.  Indeed, the newly constituted jury had not yet heard any evidence or argument on mitigation.
>
> Roseberry does not address Rule 18.5(i), which instructs that a jury reconstituted to hear penalty deliberations "shall not deliberate anew about a verdict already reached and entered," but "shall only begin anew for the phase of the sentencing that [the juror is] currently deliberating."  The trial judge carefully followed these rules:  He instructed the jury that it was to consider all of the evidence presented in the case when it made its mitigation finding.  He specifically instructed the jurors to consider the evidence presented at the guilt phase, as well as at the aggravation and penalty phases.  The judge's instructions were sufficient to protect Roseberry's due process rights.  We find no error.

*Id.*

Roseberry offers no support for his assertion that this decision is contrary to or an unreasonable application of clearly established federal law or based on an unreasonable determination of the facts.  (*See* Doc. 32 at 125.)  His contention that the trial court's instructions were "ambiguous and misleading" is unsupported.  (*Id.* at 124.)  The court instructed the jury that "unanimous agreement about mitigating circumstances is not required.  Each of you must decide individually whether a mitigating circumstance has been established.  Each of you must give any mitigating circumstance the weight you find

---

[8] A week before the penalty phase of Roseberry's trial, the court dismissed a juror (Juror 8) whose wife was scheduled to undergo open heart surgery.  He was replaced by an alternate juror (Juror 12).  Another juror (Juror 10) was dismissed for cause and replaced by an alternate (Juror 15).

1    appropriate. . . .  Each juror must determine for himself or herself what is sufficiently

2    substantial." (RT 6/4/03, a.m., at 6.)  The trial court correctly instructed the jury.

3           Claim 24(H) is denied.

4                  e.     Claim 24(N)

5           Roseberry alleges that the trial court violated the *Ex Post Facto* Clause by applying

6    Arizona's new death penalty statute.[9]  (Doc. 32 at 132.)  The Arizona Supreme Court

7    denied this claim.  *Roseberry*, 210 Ariz. at 364–65, 111 P.3d at 406–07.  Citing *State v.*

8    *Ring*, 204 Ariz. 534, 65 P.3d 915 (2003), the court held that "jury sentencing is not a

9    substantive change from prior Arizona law, but rather is merely a procedural change. . .

10   . Because this procedural change does not retroactively alter the definition of the crime of

11   murder or increase the penalty, Roseberry's ex post facto claim fails." *Roseberry*, 210

12   Ariz. at 364–65, 111 P.3d at 406–07.  This decision is neither contrary to nor an

13   unreasonable application of clearly established federal law.

14          The *ex post facto* doctrine prohibits a state from "retroactively alter[ing] the

15   definitions of crimes or increas[ing] the punishment for criminal acts." *Collins v.*

16   *Youngblood*, 497 U.S. 37, 43 (1990).  "[A]ny statute which punishes as a crime an act

17   previously committed, which was innocent when done; which makes more burdensome the

18   punishment for a crime, after its commission, or which deprives one charged with crime of

19   any defense available according to law at the time when the act was committed, is

20   prohibited as *ex post facto*." *Dobbert v. Florida*, 432 U.S. 282, 292

21   (1977) (quoting *Beazell v. Ohio*, 269 U.S. 167, 169–70 (1925)).

22          In *Dobbert*, the defendant was sentenced to death in Florida under a capital

23   sentencing system that was subsequently declared unconstitutional.  432 U.S. at 288.

24   Dobbert argued that he could not be sentenced to death under the amended Florida

25   procedures because at the time of his original sentencing the death penalty was not an

26   _____

27          [9] On June 25, 2002, one day before Roseberry's trial was set to begin, the United
     States Supreme Court issued its decision in *Ring v. Arizona*, 536 U.S. 584 (2002),
28   invalidating Arizona's capital sentencing scheme in which judges, rather than juries, made
     the factual findings rendering a defendant eligible for the death penalty.

-17-

available punishment. *Id.* at 297. The Supreme Court rejected this argument and held there was no *ex post facto* violation because the changes in Florida's statute were "clearly procedural." *Id.* at 293. "The new statute simply altered the methods employed in determining whether the death penalty was to be imposed; there was no change in the quantum of punishment attached to the crime." *Id.* at 293–94.

Under *Dobbert*, the post-*Ring* procedural changes in Arizona's death penalty are not *ex post facto* laws. *See Schriro v. Summerlin*, 542 U.S. 348, 353–54 (2004) ("*Ring*'s holding is properly classified as procedural."). Claim 24(N) is denied.

## D.    Ineffective Assistance of Counsel Claims

Roseberry raises three ineffective assistance of counsel claims. In Claim 25, he alleges that trial counsel performed ineffectively. (Doc. 32 at 138.) In Claim 26, he alleges ineffective assistance of appellate counsel. In Claim 28, he alleges ineffective assistance of PCR counsel.

Claims of ineffective assistance of counsel are governed by the principles set forth in *Strickland v. Washington*, 466 U.S. 668, 674 (1984). To prevail under *Strickland*, a petitioner must show that counsel's representation fell below an objective standard of reasonableness and that the deficiency prejudiced the defense. *Id.* at 687–88.

The inquiry under *Strickland* is highly deferential, and "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689; *see Wong v. Belmontes*, 558 U.S. 15 (2009) (per curiam); *Bobby v. Van Hook*, 558 U.S. 4 (2009) (per curiam); *Cox v. Ayers*, 613 F.3d 883, 893 (9th Cir. 2010). To satisfy *Strickland*'s first prong, a defendant must overcome "the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." 466 U.S. at 689. "The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Richter*, 562 U.S. at 105 (quoting *Strickland,* 466 U.S. at 690). "The defendant bears the heavy burden of proving that counsel's assistance was

neither reasonable nor the result of sound trial strategy." *Murtishaw v. Woodford*, 255 F.3d 926, 939 (9th Cir. 2001) (citing *Strickland*, 466 U.S. at 689).

With respect to *Strickland*'s second prong, a petitioner must affirmatively prove prejudice by "show[ing] that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694. This showing "requires a 'substantial,' not just 'conceivable,' likelihood of a different result." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (quoting *Richter*, 562 U.S. at 112).

"Surmounting *Strickland*'s high bar is never an easy task," *Padilla v. Kentucky,* 559 U.S. 356, 371 (2010), and "[e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Richter*, 562 U.S. at 105.

### 1.    **Claim 25: Ineffective assistance of trial counsel**

Claim 25 comprises a laundry list of allegations that trial counsel performed ineffectively at both the guilt and penalty phases of trial.[10] In approximately 50 separate allegations of guilt-phase ineffective assistance of counsel, Roseberry challenges seemingly every aspect of counsel's performance while also alleging that counsel were not qualified to try a capital case. (Doc. 32 at 138–57.) Roseberry alleges, for example, that trial counsel performed ineffectively by failing to protect his right to a speedy trial, failing to perform an adequate pretrial investigation, failing to secure necessary experts, failing to supervise the defense team, performing ineffectively during jury selection, failing to object to evidence, failing to object to prosecutorial misconduct, failing to adequately examine witnesses, failing to move to withdraw from representation, failing to maintain a relationship with Roseberry, and failing to object to jury instructions. (*Id.*)

Roseberry also alleges that trial counsel performed ineffectively at sentencing. He asserts that counsel failed to adequately investigate and rebut the pecuniary gain

---

[10] Roseberry was represented at trial by Ray Hanna, lead counsel, and David Stoller, co-counsel.

aggravating factor.  (*Id.* at 160.)  He further contends that trial counsel failed to adequately investigate and present mitigating evidence, including social history and mental health evidence.  (*Id.* at 161.)

During the PCR proceedings, Roseberry presented just three claims of ineffective assistance of trial counsel: that counsel was ineffective for failing to investigate other suspects and argue that someone else had murdered Fottler; failing to explore investigative leads into DNA; and failing to adequately investigate and present mitigating evidence. (Doc. 46-2, Ex. RRRRR.)  Respondents, however, have "waive[d] their affirmative defense of procedural default on all of Roseberry's ineffective assistance of counsel claims" (Doc. 45 at 105), so the Court will review each allegation.

Before addressing the merits of Roseberry's claims the Court makes two observations.  First, Roseberry's claims of ineffective assistance of trial counsel are presented in a piecemeal fashion, with little attempt to distinguish between discrete, individual claims.  (Doc. 32 at 138–69.)  Respondents have enumerated the individual claims as Claims 25(A) through 25(FF).  (Doc. 45 at 57–58 n.9, 106–50.)  Roseberry complains that this format "water[s] down the cumulative ineffectiveness of trial counsel." (Doc. 49 at 82 n.32.)  Under *Strickland*, 466 U.S. at 690, however, allegations of ineffective assistance of counsel constitute separate claims.  *See Carriger v. Lewis*, 971 F.2d 329, 333–34 (9th Cir. 1992) (en banc); *see also Moormann*, 426 F.3d at 1056.  Accordingly, the Court will address each claim individually, holding Roseberry to his burden of establishing both deficient performance and prejudice, but using the structure of Claim 25 as set out in the petition.

Second, the bulk of Roseberry's claims of ineffective assistance of trial counsel are presented in a conclusory fashion, without either legal or factual support and often without citation to the record.  Pursuant to Rule 2(c) of the Rules Governing Section 2254 Cases, a federal habeas petitioner is obligated to specify all grounds for relief, as well as the facts supporting each of these grounds.  *See Mayle v. Felix*, 545 U.S. 644, 661 (2005) (observing that Rule 2(c) requires pleading "separate congeries of facts" in support of each ground for

relief); *see also Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (explaining that "notice" pleading in habeas is insufficient and that petition "is expected to state facts that point to a 'real possibility of constitutional error'"); *Adams v. Armontrout*, 897 F.2d 332, 334 (8th Cir. 1990) (holding that "a petitioner must state specific, particularized facts which entitle him or her to habeas corpus relief for each ground specified. These facts must consist of sufficient detail to enable the court to determine, from the face of the petition alone, whether the petition merits further habeas corpus review."). Federal courts need not "sift through voluminous documents filed by habeas corpus petitioners in order to divine the grounds or facts which allegedly warrant relief." *Adams*, 897 F.2d at 333.

Conclusory allegations that are not supported by a statement of specific facts do not warrant habeas relief. *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994); *see Greenway v. Schriro*, 653 F.3d 790, 804 (9th Cir. 2011) (explaining that a "cursory and vague claim cannot support habeas relief"); *Jones v. Gomez*, 66 F.3d 199, 204–05 (9th Cir. 1995) (rejecting *Brady* claim that consisted of "conclusory allegations . . . without reference to the record or any document"); *see also Bragg v. Galaza*, 242 F.3d 1082, 1088–89 (9th Cir. 2001) (finding no ineffective assistance based on failure to investigate and question witness where there was no indication of what additional information could have been gained).

Roseberry's claims of ineffective assistance of trial counsel are divided into five sections, which the Court addresses as follows.

> a.    Trial counsel repeated various prejudicial deficiencies throughout their representation

Roseberry's allegations of ineffective assistance in this section are largely conclusory and unsupported by facts, argument, or citations to the record. They will be denied on those grounds except where otherwise indicated.

(1)    Roseberry alleges that trial counsel performed ineffectively by failing to demand a speedy trial. (Doc. 32 at 139.) Roseberry offers only a conclusory assertion that counsel performed deficiently by agreeing to a continuance after the *Ring* decision and

does not argue that he was prejudiced by counsel's performance.[11] (*Id.*) He cannot show that the trial would have proceeded without the death penalty as a potential punishment if he had not agreed to a continuance. Roseberry does not meet his burden under *Strickland* and Claim 25(a)(1) is denied.

(2) Roseberry alleges that counsel performed ineffectively by failing to meet with him and with appropriate members of the defense team "[i]mmediately upon appointment to the case" to "discuss and investigate all aspects of the case; to explore potential sources of information relating to the offense, Mr. Roseberry's mental state, aggravating and mitigating factors; and to obtain releases for securing the necessary confidential records." (Doc. 132 at 139–40.) Roseberry also alleges that counsel "should have used all appropriate avenues to find potentially relevant records and information about Mr. Roseberry and his family." (*Id.* at 140.)

As Respondents note, "Roseberry cites nothing in the record establishing when counsel first met with Roseberry and what they discussed. He also does not point to anything in the record establishing what information counsel collected." (Doc. 45 at 108.) Roseberry also fails to demonstrate that he was prejudiced by counsel's performance. He lists the types of records counsel should have obtained, but he does not establish that the records actually exist. Roseberry offers no support for either prong of *Strickland*, and the conclusory allegations in Claim 25(a)(2) do not entitle him to habeas relief. *See United States v. Taylor*, 802 F.2d 1108, 1118–19 (9th Cir. 1986) (explaining that when a habeas petitioner claims his trial counsel failed to prepare an adequate defense, he must point to specific errors or omissions that prejudiced his defense).

---

[11] On June 25, 2002, the trial court noted that, in light of the *Ring* decision, the trial could not take place as scheduled. (RT 6/25/02 at 2–3.) The court offered the State the option of withdrawing the application for the death penalty and proceeding with the trial as scheduled; the State declined. (*Id.* at 3–4.) The State requested that the trial court continue the trial, and defense counsel agreed that "a continuance is the way to go." (*Id.* at 4–5.) The court continued the trial, which began on December 4, 2002.

(3)    Roseberry alleges that "counsel did not develop or execute an adequate plan for defense of the case, including getting the assistance of all necessary experts, investigative, and other professional services for every stage of the proceedings." (Doc. 32 at 140.)  As that is the sum total of the support offered for Claim 25(a)(3), the claim is denied as conclusory.

(4)    Roseberry alleges that "counsel and their team did not ensure that their workloads were maintained at a level that enabled them to provide effective representation." (Doc. 32 at 140.)  He offers no support for this allegation.  Claim 25(a)(4) is denied.

(5)    Roseberry alleges that "counsel did not seek removal at the necessary and appropriate times" because "[t]hey lacked a working or confidential relationship with the client, lacked a functional defense team, lacked training and qualification, and lacked adequate time and resources to investigate and defend all phases of the case." (*Id.* at 141.)  Again, these are conclusory allegations, unsupported by any facts or legal analysis, which do not entitle Roseberry to relief.  Claim 25(a)(5) is denied.

(6)    Roseberry alleges that "counsel did not obtain or maintain adequate training in capital defense." (*Id.* at 141.)  As Respondents note, Roseberry offers no information about what training counsel did or did not have, cites no authority establishing that a lack of training constitutes ineffective assistance, and fails to allege that he was prejudiced by counsel's alleged lack of training.  Claim 25(a)(6) is denied.

(7)    Roseberry alleges that his "defense team also did not request to be adequately funded or compensated." (Doc. 32 at 141–42.)  This vague and conclusory allegation about a lack of funding does not entitle Roseberry to habeas relief.  Roseberry offers no citation to the record establishing counsel's requests for funding or compensation, what funding and compensation they received, and how that funding was inadequate, nor does he offer any support for a claim that he was prejudiced by a lack of funding.  Claim 25(a)(7) is denied.

(8)    Roseberry alleges that "counsel did not fulfill their duties to adequately

supervise their team or ensure a working, functional relationship amongst the team members." (Doc. 32 at 142.) Roseberry does not attempt to support this conclusory allegation. Claim 25(a)(8) is denied.

(9)     Roseberry alleges that "counsel continued their representation despite conflicts of interest." (Doc. 32 at 142.) Roseberry does not identify the alleged conflicts. Claim 25(a)(9) is denied.

(10)     Roseberry alleges that "counsel did not use a team approach to work with their investigators and experts, firing the only investigators who may have had any idea what they were doing." (*Id.*) Roseberry does not explain what a "team approach" consists of, provide examples of its absence in his case, or offer any support for either the deficient performance or prejudice prongs of *Strickland*. Claim 25(a)(10) is denied.

(11)     Roseberry alleges that the "defense team did not maintain an adequate or appropriate relationship with Mr. Roseberry" and "counsel failed to adequately advise Mr. Roseberry, guide him in decisions, or have the appropriate background information to make their own informed decisions. They failed to provide effective counsel regarding the decisions to testify or allocute and to ensure Mr. Roseberry's ongoing competency." (*Id.* at 142–43.)

Again, this claim consists of vague and conclusory allegations that cannot suffice to demonstrate deficient performance or prejudice. Roseberry does not specify what inadequacies existed in the lawyer-client relationship, how they resulted from counsel's deficient performance, or how the unnamed difficulties prejudiced Roseberry. Claim 25(a)(11) is denied.

(12)     Roseberry alleges that counsel failed to investigate his case.[12] (Doc. 32 at 143–46.) He alleges that "trial counsel's investigation was perfunctory and deficient"; that counsel "failed to test the State's case"; and that "counsel was doing no more than 'going

---

[12] Roseberry's allegation that counsel's penalty-phase investigation was ineffective is discussed below.

through the motions.'" (*Id.* at 145.)  Roseberry lists the areas of counsel's allegedly

inadequate investigation or presentation of evidence:

> the charging documents (including the facts and elements charged; the elements making Mr. Roseberry death-eligible; defenses available to the charges and penalty; the propriety of charging separate murder counts; information in the State's control; issues related to both parties' discovery obligations; potential witnesses (including witnesses with purported knowledge; alibi witnesses; witnesses familiar with Mr. Roseberry's life history; and witnesses with knowledge of issues related to the victim and crimes alleged); all potential sources of impeachment; the police and prosecution (including securing and reviewing information controlled by prosecution or law-enforcement authorities; police reports; autopsy reports; photos; video- or audio-tape recordings; crime scene and crime lab reports; witness reports; and underlying notes or data); the physical and forensic evidence (including information from relevant government agencies; expert reports; and underlying data and materials; and examining these other relevant apparent issues with the assistance of appropriate experts); and the scene (including independently investigating the relevant scenes and locations as soon as possible).

(Doc. 32 at 144.)

Roseberry does not supplement this list with citations to the record or arguments about the nature of counsel's deficient performance or the resulting prejudice.  *See Adams*, 897 F.2d at 333.  He cannot meet his burden under *Strickland* without some showing of what an adequate investigation into these areas would have revealed.  *See Greenway*, 653 at 804 ("Greenway has never alleged, much less demonstrated, what more counsel should have known or discovered."); *Jones*, 66 F.3d at 204–05; *James*, 24 F.3d at 26; *see also Trottie v. Stephens*, 720 F.3d 231, 243 (5th Cir. 2013) ("[A] defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial.").  Claim 25(a)(12) is denied.

(13)  Roseberry alleges that "[t]rial counsel and their team were not qualified to represent a person facing the death penalty and did not request or adequately support any requests for a qualified team" and that "[n]o one on the defense team was qualified . . . to

screen or work with individuals with mental or psychological disorders or impairments." (Doc. 32 at 146.)  As Respondents correctly note, "Roseberry offers nothing but his self-serving assertion to show that counsel was not qualified."  (Doc. 45 at 116.)

"In considering a claim of ineffective assistance of counsel, it is not the experience of the attorney that is evaluated, but rather, his performance."  *LaGrand v. Stewart*, 133 F.3d 1253, 1275 (9th Cir. 1998).  A petitioner alleging ineffective assistance based on counsel's inexperience "must point to specific acts or omissions that may have resulted from counsel's inexperience and other professional obligations."  *Woods v. Sinclair*, 764 F.3d 1109, 1132 (9th Cir. 2014).  This Roseberry has failed to do.  Claim 25(a)(13) is denied.

(14)    Roseberry alleges that counsel "failed to adequately research or present the appropriate legal and factual claims and arguments."  (Doc. 32 at 146.)  Roseberry does not indicate what claims counsel failed to research or present and therefore does not attempt to meet his burden under *Strickland*.  Claim 25(a)(14) is denied.

(15)    Roseberry alleges that "trial counsel ineffectively argued to the jury and the court both the facts and the law relevant to Mr. Roseberry's case, or failed to, where necessary, make any argument at all" and "failed to investigate, develop, and present a coherent theory of defense."  (*Id.* at 146.)  Roseberry does not attempt to support these vague and conclusory allegations.  Claim 25(a)(15) is denied.

(16)    Roseberry alleges that "counsel also failed to request adequate remedies after court rulings," including asking "to have objectionable evidence or testimony stricken, or to have the court instruct the jury to disregard it."  (*Id.* at 147.)  Roseberry does not indicate which rulings were objectionable or offer any support for either the deficient performance or prejudice prongs under *Strickland*.  Claim 25(a)(16) is denied.

(17)    Roseberry alleges that "counsel did not adequately seek an agreed-upon disposition to the case, did not prepare the client to accept such a disposition, and did not research the facts and law necessary to reach such a disposition."  (*Id.* at 147.)  As Respondents note, "Roseberry does not describe what counsel told him about the plea offer

or cite any authority to establish that counsel's advice was deficient. He also has not alleged or demonstrated that he was interested in a plea agreement, or that he would have accepted a plea offer if he had been properly advised." (Doc. 45 at 118–19.) Roseberry cannot meet his burden under *Strickland* with such vague and conclusory allegations. Claim 25(a)(17) is denied.

(18)    Roseberry alleges that "counsel did not adequately prepare for any portion of the proceedings." (Doc. 32 at 147.) Other than the bare allegation that counsel "filed [sic] to even attempt to find witnesses with knowledge of the guilt phase" (*id.*), Roseberry does not identify specific instances of inadequate preparation and does not attempt to demonstrate prejudice from counsel's allegedly inadequate preparation. Claim 25(a)(18) is denied.

(19)    Roseberry alleges that "counsel failed to adequately examine witnesses for both parties at all phases of the trial" and "failed to adequately investigate and prepare in order to effectively elicit testimony from the witnesses." (*Id.*) The only specific instance cited by Roseberry is the cross-examination of one of the lead detectives in his case. (*Id.* at 148.) Roseberry also refers to counsel's alleged failure "to reveal in any coherent way that the State's witnesses had arranged . . . deals or implicit agreements to benefit or protect themselves" and "to effectively ask at all about the witnesses' evolving testimony." (*Id.*)

Roseberry does not identify any deficiencies in counsel's cross-examination of the detective. He does not identify the witnesses who had deals with the State or whose testimony changed, nor does he explain how the examination of these witnesses was deficient.[13] Finally, he does not address the question of prejudice. For these reasons, Claim 25(a)(19) is denied.

---

[13] The only witness who had an agreement with the State at the time of trial was Charles Dvoracek. In exchange for his testimony against Roseberry, Dvoracek pleaded guilty to conspiracy to commit transportation of marijuana for sale and solicitation of first-degree murder. (RT 12/6/02 at 42–43.) On cross-examination, Roseberry's counsel elicited the fact that Dvoracek had lied after he entered into the plea agreement but that the State nevertheless did not intend to withdraw the agreement. (*Id.* at 87–91.)

(20)    Roseberry alleges that "counsel's choice of its own witnesses and its presentation of those witnesses was equally ineffectual." (Doc. 32 at 148.)  Roseberry does not identify any witnesses who should have been called but were not.  He does not indicate how counsel's handling of their witnesses was "ineffectual."  Roseberry offers support for neither prong of *Strickland*.  Claim 25(a)(20) is denied.

(21)    Roseberry alleges that "counsel also repeatedly alienated the jury" by being unprepared, confusing the jurors' last names, and "aggressively" questioning a juror who was suspected of violating the court's admonition not to discuss the case. (Doc. 32 at 148.)  These examples fall far short of establishing deficient performance or prejudice.  During voir dire, counsel mistakenly referred to a panel member as Mr. Ortiz instead of Mr. Martinez.  (RT 12/5/02 at 137.)  A slip of the tongue does not amount to constitutionally ineffective assistance.  In addition, the transcript shows that contrary to Roseberry's characterization, counsel respectfully questioned the juror who was suspected of violating the admonition.  (RT 6/4/03, a.m., at 12, 15–16.)  Claim 25(a)(21) is without merit and is denied.

(22)    Roseberry alleges that counsel "made incoherent and prejudicial arguments throughout all of the proceedings." (Doc. 32 at 149.)  He cites one example, but does not explain how counsel's comment represented deficient performance and resulted in prejudice to the defense.  (*Id.*)  Apart from this single incident the claim is both vague and conclusory.  Claim 25(a)(22) is denied.

(23)    Roseberry alleges that counsel "failed to object to various instances of prosecutorial misconduct." (Doc. 32 at 149.)  Roseberry refers to the allegations of misconduct set out in Claim 7, most of which are unsupported factually and legally.[14] (*See* Doc. 32 at 71–73.)

---

[14] In these conclusory claims Roseberry alleges "[o]n information and belief," that "the prosecutor failed to investigate, disclose, or timely disclose material evidence and issues related to Mr. Roseberry's guilt, innocence, penalty, or related to the witnesses with information in his case"; "elicited false testimony and evidence or allowed false testimony and evidence to go uncorrected"; "presented . . . theories of the case that were not supported

With respect to the prosecutorial misconduct claims that are more than conclusory, Roseberry shows neither deficient performance nor prejudice. Roseberry alleges that "the prosecutor's questioning of witnesses was argumentative or misleading." (Doc. 32 at 72.) He cites a single incident, in which counsel's objection to the prosecutor's question was sustained. (RT 12/18/02 at 112–13.)

Roseberry also alleges that "[t]he prosecutor misstated the law or evidence (or failed to correct misstatements of the law or evidence) to potential jurors, the jury, and the court." (Doc. 32 at 72.) Specifically, Roseberry argues that the prosecutor supported "various improper jury instructions." (*Id.*) He cites no support for the proposition that counsel performs ineffectively by failing to object to a prosecutor's support for the court's jury instructions. Claim 25(a)(23) is meritless and is denied.

(24)     Roseberry alleges that counsel "failed to adequately object to and seek appropriate remedies for juror misconduct and tampering." (Doc. 32 at 147.) Roseberry refers to the allegations in Claim 8, which include "jury misconduct, jurors lying under oath; jury tampering, including pressure and intimidation of other jurors; and unduly biased and prejudicial jurors." (*Id.* at 74–75.) These allegations are conclusory and unsupported by the portions of the record cited by Roseberry. (*See* RT 6/4/03, a.m.) After the break in trial, the court questioned the jurors to determine whether they had been in contact with each other or had been exposed to information about the case. Nothing in the jurors' answers suggested lying, tampering, or bias. Accordingly, trial counsel did not perform ineffectively by failing to object to jury misconduct and tampering. Claim 25(a)(24) is denied.

(25)     Roseberry alleges that counsel "failed in their duties to facilitate the work of successor counsel." (Doc. 32 at 149.) He alleges that counsel "failed to keep records of

with testimony and evidence"; "failed to maintain or supervise the proper handling and maintenance of crucial evidence"; "introduced testimony and evidence in violation of Mr. Roseberry's fair trial, due process, and confrontation rights"; and "limit[ed] trial counsel's investigation of the case and defense." (Doc. 32 at 72–73.) None of these allegations is supported with facts or citations to the record. *See Adams*, 897 F.2d at 333.

the case . . . in a manner that that would inform successor counsel of significant developments relevant to the litigation; failed to provide the client's files and information regarding all aspects of the representation to successor counsel; failed to share potential further areas of legal and factual research with successor counsel; and refused to cooperate in any meaningful way with successor counsel." (*Id.*) These allegations are conclusory and unsupported by any facts or citations to the record.

Roseberry also refers to Claim 12, which alleges that "the trial court failed to record crucial portions of the trial" and "on information and belief, the court's record regarding evidence and exhibits may be incomplete." (*Id.* at 84.) Roseberry does not meet his burden of showing deficient performance or prejudice. He cites seven instances that took place off the record. (*Id.*) The first of these instances did not involve unrecorded proceedings. (RT 4/16/01 at 4–5.) One of the instances was a bench conference (RT 5/2/02 at 9) and another was an off-the-record discussion between the court and counsel (RT 12/11/02 at 11). The remaining incidents consisted of defense counsel conferring with each other. (RT 6/14/02 at 81, 83, 106, 159.) Roseberry does not argue that the lack of a record with respect to these occurrences had any effect on successor counsel's ability to file an appeal. *Cf. Madera v. Risley*, 885 F.2d 646, 648 (9th Cir. 1989) (indicating a petitioner must identify a "tenable theory" as to the appealable error that would be found in the missing transcript); *Scott v. Elo*, 302 F.3d 598, 604 (6th Cir. 2002) (explaining that "federal habeas relief based on a missing transcript will only be granted where the petitioner can show prejudice").

Counsel did not perform ineffectively in failing to ask the court to record the incidents discussed above. The assertion that the record is incomplete is too conclusory to support a claim for habeas relief. Accordingly, Claim 25(a)(25) is denied.

> b. Trial counsel performed deficiently and prejudicially in investigating, presenting, and litigating Roseberry's case before trial

(1) Roseberry alleges that trial counsel performed ineffectively because they "either did not obtain or did not review files from U.S. Customs, or other law enforcement agencies." (Doc. 32 at 150.) This allegation is wholly conclusory. The claim provides no

basis for the Court to believe that counsel failed to obtain or review the records, that the records existed and were obtainable, or that they contained information that would have aided the defense. Because it satisfies neither prong of *Strickland*, Claim 25(b)(1) is denied.

(2)    Roseberry alleges that counsel "never viewed the majority of physical evidence collected by the Yavapai County Sheriff's Office." (*Id.*) Again, this conclusory claim cites no support for the assertion that counsel failed to view certain evidence or that viewing unspecified items of evidence would have assisted the defense. Claim 25(b)(2) is denied.

(3)    Roseberry alleges that counsel performed ineffectively by failing to object to severance of his trial from his wife's.[15] (*Id.*) Roseberry states that severance was "improper" but provides no legal argument in support of that position and does not argue that a motion objecting to severance would have been granted. Counsel does not perform ineffectively by failing to raise a meritless motion. *See, e.g.*, *Juan H. v. Allen*, 408 F.3d 1262, 1273 (9th Cir. 2005) ("[T]rial counsel cannot have been ineffective for failing to raise a meritless objection."); *Rupe v. Wood*, 93 F.3d 1434, 1445 (9th Cir. 1996) ("[T]he failure to take a futile action can never be deficient performance."). Claim 25(b)(3) is denied.

(4)    Roseberry alleges that counsel "failed to ensure Mr. Roseberry underwent adequate pretrial mental and psychological screening." (*Id.* at 151.) He asserts that he "was suffering serious issues with brain impairment, degeneration and decompensation, memory issues, depression, anxiety, and problems reasoning" that should have prompted counsel to seek additional mental health examinations before trial. (*Id.*) He also contends that the court-ordered evaluation he underwent was inadequate. (*Id.*)

Respondents counter that Roseberry "has not established that additional testing would have revealed anything more than the court-ordered evaluation" and "has not

---

[15] The trial court granted severance based on the discrepancy of the evidence against Roseberry and his wife, citing the likelihood that the evidence against Roseberry would "rub-off" on Diane if they were tried together. (RT 6/14/02 at 225.)

demonstrated a reasonable likelihood that the result of the proceeding would have been different if counsel had sought additional testing." (Doc. 45 at 128.) Respondents are correct. The allegations here are conclusory. Roseberry does not identify what "red flags" counsel missed, nor does he establish that the evaluation he did undergo was inadequate. Claim 25(b)(4) is denied.

(5) Roseberry alleges that counsel was ineffective for failing "to research and raise adequate and sufficient pre-trial challenges." (*Id.*) The claim identifies only one pretrial challenge counsel failed to make: that the court erred in admitting involuntary statements made by Roseberry. The claim does not identify which statements were involuntary, nor does it argue that a motion to exclude the unidentified statements would have been granted. Because it satisfies neither prong of *Strickland*, Claim 25(b)(5) is denied.

c.    Trial counsel performed deficiently and prejudicially during jury selection

(1) Roseberry alleges that because counsel were inexperienced in selecting capital juries, they "should have requested and obtained an expert to assist in selecting the jury for Mr. Roseberry's case" and "should have asked for a continuance and gained training on selecting capital jurors." (Doc. 32 at 153.) Roseberry's assumption that the court would have appointed a jury consultant is conclusory and, as Respondents note, not consistent with caselaw. (Doc. 45 at 129–30.) Roseberry cites no authority for the proposition that failing to seek a jury consultant constitutes ineffective assistance of counsel. *Cf. Moore v. Johnson*, 225 F.3d 495, 503 (9th Cir. 2000) ("While the wealthiest of defendants might elect to spend their defense funds on jury consultants, indigent defendants are not privileged to force the state to expend its funds on this exercise in bolstering an attorney's fundamental skills."). Claim 25(c)(1) is denied.

(2) Roseberry alleges that "counsel failed to file the appropriate pre-trial motions to ensure the parties and court followed a process that ensured Mr. Roseberry's full rights to a voir dire that comported, at a minimum, with *Morgan*." (Doc. 32 at 153.) Roseberry

does not indicate what motions counsel should have filed or cite what pretrial motions counsel did file. (*Id.* at 153–54.) In fact, the record shows that counsel filed a "proposed voir dire procedure" that would have included individual questioning on issues of publicity, hardship, and the prospective jurors' death penalty views. (ROA 126.) Counsel also filed a 30-page proposed juror questionnaire that included questions addressing *Morgan*. (ROA 127.) Claim 25(c)(2) is meritless and will be denied.

(3)     Roseberry alleges that after the trial court denied their request to use a juror questionnaire, "counsel failed to even ask the questions in the questionnaire" and "[t]he voir dire they did conduct was woeful." (Doc. 32 at 154.) According to Roseberry, counsel "would begin asking jurors about death-penalty views, but never follow up with important questions to root out the jurors' true views. When jurors were adamant that they would choose death, trial counsel did nothing to question them further and exclude them." (*Id.*) Roseberry does not identify any of these instances or cite which prospective jurors were "adamant they would choose death." (*Id.*) Respondents contend that no biased juror was seated. (Doc. 45 at 131–32.)

The judge and the parties individually questioned prospective jurors who had indicated a strong disposition for or against the death penalty. (*See* RT 12/5/02 at 25–37, 41–44, 50–60.) The court excused for cause five of the jurors in the former group, leaving one juror, G.B., who upon further questioning stated she could keep an open mind in considering mitigating evidence. (*Id.* at 55.) Contrary to Roseberry's assertion, defense counsel, along with the court, thoroughly questioned G.B. about her ability carry out her duties as a juror. (*Id.* at 56–60.) After this questioning, counsel decided not to challenge G.B. for cause, and the court indicated that it would have denied such a challenge if made. (*Id.* at 145.)

Roseberry has shown neither deficient performance nor prejudice. Claim 25(c)(3) is denied.

(4)     Roseberry alleges that "counsel did not argue for a neutral jury selection as *Morgan* requires." (Doc. 32 at 154.) He argues that counsel "adopted wholly the State's

language," "taught the jury the language of death," and "instilled in them a misleading presumption that their job was to choose death." (Doc. 32 at 154.) This claim is not only conclusory but indecipherable. Roseberry makes no attempt to identify the "language of death," let alone explain how defense counsel taught the language to the jurors or how learning the language affected the jurors' deliberations. In any event, the claim, lacking any factual or legal support, falls far short of satisfying *Strickland*. Claim 25(c)(4) is denied.

(5)     Roseberry alleges that "counsel's statements to the jury during voir dire and explanations to the jurors . . . , and trial counsel's failure to ask that the judge ask the jurors particular questions, were ineffectual and deficient." (Doc. 32 at 154–55.) He does not specify what statements were problematic or what questions counsel failed to ask. Roseberry contends that counsel "missed countless opportunities to discover jurors' positions and their group decision-making styles, and to educate the jurors about the complexities of their decisions in capital cases." (*Id.* at 155.) He cites no support for the notion that counsel perform ineffectively if they fail to discern a jurors' decision-making styles or explain the complexities of capital cases. Roseberry argues that counsel "made almost no effort to explain mitigation" to the jurors. (*Id.*) He does not indicate what effect counsel's alleged failure to explain mitigation had on the composition of the jury. Each of these allegations is conclusory and insufficient to establish ineffective assistance of counsel under *Strickland*. *See Weaver v. Massachusetts*, 137 S. Ct. 1899, 1912–13 (2017) (rejecting ineffective assistance claim where petitioner offered no legal argument or evidence showing prejudice). Claim 25(c)(5) is denied.

(6)     Roseberry alleges that "counsel failed to become familiar with the precedents relating to questioning and challenging potential jurors." (*Id.* at 155.) He does not cite which precedents counsel was unfamiliar with or what "wealth of research" counsel ignored. (*Id.*) Roseberry contends that "counsel did not adequately: (1) expose prospective jurors who would automatically impose death after a murder conviction or finding of death eligibility; (2) uncover prospective jurors unable to give meaningful consideration to

-34-

mitigating evidence; or (3) rehabilitate potential jurors who initially indicated opposition to the death penalty." (*Id.*)

As discussed above, only one juror served who indicated a predisposition toward the death penalty. Her subsequent answers satisfied counsel and the court that she could fulfill her duties, and the court indicated that it would not have granted a challenge for cause. The remaining prospective jurors with a predisposition to the death penalty were excused. Counsel did not perform ineffectively.

Roseberry does not indicate which prospective jurors counsel failed to rehabilitate or how his efforts were deficient. He does not indicate how counsel failed to uncover jurors who would not give meaningful consideration to mitigation. In sum, Roseberry has not demonstrated that any biased juror served on the jury and has not attempted to show that if counsel had questioned the prospective jurors differently, or if different jurors had been seated, there was a reasonable likelihood that the outcome of trial or sentencing would have been different.

Roseberry fails to meet his burden under *Strickland*. Claim 25(c)(6) is denied.

(7) Roseberry alleges that "counsel made similar errors in voir dire before the penalty phase." (Doc. 32 at 156.) He also argues that counsel failed to challenge jurors for cause and should have moved to strike the jury panel due to the long hiatus between the end of the trial and the beginning of the penalty phase. (*Id.*)

The trial court and counsel questioned the jurors regarding their compliance with the admonition during the break from trial, and contrary to Roseberry's allegation, counsel moved to strike six jurors. (RT 6/4/03, a.m., at 9–92, 95–96.) The court excused one juror who had read multiple news reports about the case. (*Id.* at 104–05.)

Roseberry's allegation that counsel's questioning of the jurors was inadequate is unsupported and the proposition that the court would have struck the entire panel if defense counsel had so moved is entirely speculative. Roseberry cannot show either deficient performance or prejudice. Claim 25(c)(7) is denied.

-35-

(8)    Roseberry alleges that counsel's failure to complete a mitigation investigation before jury selection rendered them unable "to discover how potential jurors would react to that information, nor could trial counsel strategize about which jurors to choose." (Doc. 32 at 157.)  Roseberry does not support this claim with law or facts establishing either prong of *Strickland*. *See Weaver*, 137 S. Ct. at 1912–13.  Claim 25(c)(8) is denied.

> d.    Trial counsel performed deficiently and prejudicially during the guilt/innocence phase of Roseberry's trial.

(1)    Roseberry alleges that "counsel failed in the ways described above in part A." (Doc. 32 at 157.)  Claim 25(d)(1) is denied for the reasons set forth above.

(2)    Roseberry alleges that "counsel failed to investigate and raise the issues described elsewhere in this Petition." (Doc. 32 at 157.)  Roseberry lists several issues that counsel allegedly failed to "adequately raise."  As set forth next, these claims do not entitle Roseberry to habeas relief, and Claim 25(d)(2) will be denied.  Again, many of the claims in this section are conclusory and will be denied on that basis.

*(a)*    Citing Claim 10 of his habeas petition, Roseberry alleges that counsel failed to raise "violations of Mr. Roseberry's rights under the Confrontation Clause." (*Id.* at 157–58.)  In Claim 10, Roseberry, relying on *Crawford v. Washington*, 541 U.S. 36 (2004), alleges that his confrontation rights were violated when the trial court "allowed the State to vaguely elicit from the county detective that 'information' had led him to Mr. Roseberry."[16]  (Doc. 32 at 78.)  He also alleges that his rights were violated by the testimony of a medical examiner who did not perform the Fottler autopsy.  (*Id.* at 79.)

---

[16] The prosecutor asked the detective how the investigation had turned to Roseberry. (RT 12/6/02 at 130.)  The detective testified that law enforcement had begun to look into Fottler. (*Id.*)  Based on interviews with Fottler's wife, detectives "got in contact with the U.S. Customs, and they gave us intelligence on Mr. Fottler and how he was involved with a drug smuggling cartel out of Los Angeles, who has helped the Pemberton family out of L.A." (*Id.* at 130–31.)  Customs gave the detectives the license plate number of a motorhome that had been used to transport loads of marijuana to Detroit. (*Id.*)  The license plate was registered to Homer and Diane Roseberry. (*Id.*)

Because both of these allegations are meritless, trial counsel did not perform ineffectively in failing to raise them.

Under *Crawford*, testimonial statements of a non-testifying witness are admissible only where the declarant is unavailable and where the defendant has had a prior opportunity to cross-examine. 541 U.S. at 59. *Crawford* was decided in March 2004, more than a year after the testimony at issue. Counsel could not have been ineffective for failing to raise an objection based on a Supreme Court decision that had not been issued. Roseberry offers no argument that if counsel had objected to the testimony, the objection would have been sustained.

Moreover, *Crawford* "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." 541 U.S. at 59 n.9. The detective's testimony about the information he received was not admitted for its truth, but rather to explain why detectives focused on Roseberry as a suspect. *See United States v. Wahchumwah*, 710 F.3d 862, 871 (9th Cir. 2013) (explaining that anonymous complaints offered "merely to explain why the federal agents began investigating" defendant were not testimonial hearsay).

Finally, the Arizona Supreme Court has consistently held that a testifying medical examiner may offer an opinion based on an autopsy performed by a non-testifying expert. *See, e.g.*, *State v. Dixon*, 226 Ariz. 545, 553, 250 P.3d 1174, 1182 (2011) ("Our cases teach that a testifying medical examiner may, consistent with the Confrontation Clause, rely on information in autopsy reports prepared by others as long as he forms his own conclusions."). Counsel did not perform ineffectively in failing to raise these Confrontation Clause issues.

       *(b)*     Roseberry alleges that counsel performed ineffectively by failing to object to the "State improperly providing transcripts to the jury for review." (Doc. 32 at 158.) He does not indicate what transcripts were provided to the jury, how providing the unspecified transcripts was improper, or how counsel's performance was deficient and

prejudicial in failing to object to providing the jury with the unspecified transcripts. This conclusory allegation fails. *Greenway*, 653 F.3d at 804; *James*, 24 F.3d at 26.

(c) Roseberry alleges that counsel performed ineffectively by failing to object to the court's improper jury instructions. (Doc. 32 at 158.) Roseberry does not specify what instructions counsel should have objected to or attempt to show that counsel's performance in failing to object to these unspecified instructions was deficient and prejudicial. This conclusory allegation fails.[17] *Greenway*, 653 F.3d at 804; *James*, 24 F.3d at 26; *see Snow v. Sirmons*, 474 F.3d 693, 725 (10th Cir. 2007) (rejecting claim where petitioner "ha[d] not presented sufficient argument for why counsel's failure to object to the evidence was deficient and how such alleged failure prejudiced him").

(d) Roseberry alleges that counsel performed ineffectively by failing to challenge "the court's decision to make *Enmund/Tison* findings in the jury's place." (Doc. 32 at 158.) This claim is meritless because, as discussed above, the Supreme Court has held that findings pursuant to *Enmund/Tison* are not required to be found by a jury. *Cabana*, 474 U.S. at 387.

(e) Roseberry contends that counsel did not adequately raise the issue of "Roseberry's brain impairments" and "incompetency (and the process for determining it)." (Doc. 32 at 158.)

The standard for determining competency to stand trial requires that a defendant have (1) "'a rational as well as factual understanding of the proceedings against him,' and (2) 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding.'" *Stanley v. Cullen*, 633 F.3d 852, 860 (9th Cir. 2011) (quoting *Dusky v.*

---

[17] The Court has reviewed Roseberry's claims of instructional error and determined that none would entitle him to relief on the grounds of ineffective assistance of counsel. In Claim 1, Roseberry alleges that his rights were violated when the trial court provided an unconstitutional causal connection instruction during the penalty phase of trial. (Doc. 32 at 41.) Counsel objected to the instruction. (RT 6/5/09, a.m., at 19.) In Claims 24(A)–(G), as denominated by Respondents, Roseberry lists several alleged instructional errors. (Doc. 32 at 107–12.) In some instances, counsel requested instructions that were not given or objected to instructions that were. In other instances, the instructions were not erroneous, so counsel did not perform ineffectively by failing to object to them. *See Roseberry*, 210 Ariz. at 369–70, 111 P.3d at 411–12.

*United States*, 362 U.S. 402, 402 (1960) (per curiam)). "A claim that counsel was deficient for failing to move for a competency hearing will succeed only when there are sufficient indicia of incompetence to give objectively reasonable counsel reason to doubt defendant's competency, and there is a reasonable probability that the defendant would have been found incompetent to stand trial had the issue been raised and fully considered." *Hibbler v. Benedetti*, 693 F.3d 1140, 1149–50 (9th Cir. 2012) (quotations omitted). Roseberry can make neither showing.

Roseberry underwent a mental health examination under Rule 11 of the Arizona Rule of Criminal procedure and was determined competent to stand trial. (*See* ROA 111.) He asserts that this examination was an inadequate test of his competence but does not explain why. (Doc. 32 at 68.)

Moreover, there was no evidence that Roseberry had ever been diagnosed with psychosis or been treated with antipsychotic medications, or that he had attempted suicide near the time of trial. *See, e.g.*, *McMurtrey v. Ryan*, 539 F.3d 1112, 1125 (9th Cir. 2008); *see also Boag v. Raines*, 769 F.2d 1341, 1343 (9th Cir. 1985) ("In cases finding sufficient evidence of incompetency, the petitioners have been able to show either extremely erratic and irrational behavior during the course of the trial . . . , or lengthy histories of acute psychosis and psychiatric treatment."). Finally, neither the trial court nor counsel raised concerns about Roseberry's competence during the course of the trial. *See Boyde v. Brown*, 404 F.3d 1159, 1167 (9th Cir. 2005); *Odle v. Woodford*, 238 F.3d 1084, 1089 (9th Cir. 2001).

There was "insufficient evidence of [the prisoner's] incompetence . . . to justify a conclusion that defense counsel were ineffective in failing to move for competency proceedings." *Stanley*, 633 F.3d at 863. Accordingly, Claim 25(d)(2)(e) is denied.

       *(f)*     Roseberry alleges that counsel failed to challenge prosecutorial misconduct. (Doc. 32 at 158.) This claim is denied for the reasons set forth in Claim 25(a)(23).

(g)     Roseberry alleges that counsel failed to challenge jury misconduct. (*Id.*)  This claim is denied for the reasons set forth above in Claim 25(a)(24).

(h)     Roseberry alleges that counsel failed to challenge "the State's admission of improper testimony and evidence, including other bad acts and other prejudicial evidence." (Doc. 32 at 158.)  Roseberry does not specify what bad acts or other prejudicial evidence counsel should have challenged, nor does he attempt to show that counsel's performance in failing to challenge the unspecified evidence constituted deficient and prejudicial performance.  This conclusory allegation fails.  *Greenway*, 653 F.3d at 804; *James*, 24 F.3d at 26.

(3)     Roseberry alleges that counsel failed to investigate or consult their own experts; failed to effectively challenge the testimony and evidence of the State's experts; and hired no experts to review or testify regarding physical evidence, evidence regarding the State's investigation and work with other agencies, ballistics evidence, forensic evidence, handwriting-analysis evidence, and drug-dog evidence.  (Doc. 32 at 158.)  Roseberry offers no argument, factual or legal, in support of these allegations (*id.*), and it is not the Court's responsibility to search the record for facts or arguments that might support this claim.  *See Adams*, 897 F.2d at 333; *see also Ceja v. Stewart*, 97 F.3d 1246, 1255 (9th Cir. 1996) (rejecting *Strickland* claim where petitioner failed to explain what compelling evidence would have been uncovered had counsel interviewed more witnesses).  Claim 25(d)(3) is denied.

(4)     Roseberry alleges that "counsel also failed to object to the admission of improper, unsupported, or unfounded evidence and exhibits." (*Id.* at 158.)  Roseberry does not indicate what evidence and exhibits he is referring to.  Claim 25(d)(4) is denied.

(5)     Rosebery alleges that "counsel also failed to adequately research and support their arguments" for an instruction on second-degree murder.  (Doc. 32 at 158.)  As Respondents note, Roseberry does not identify any deficiency in counsel's request for an instruction on second-degree murder or attempt to argue that but for the unidentified deficiency, the motion would have been granted.  In any event, such a motion would have

been futile, as the evidence overwhelmingly established that Roseberry shot Fottler. The evidence would not have supported a verdict of second-degree murder. *See Beck v. Alabama*, 447 U.S. 625, 627 (1980). Counsel did not perform ineffectively by failing to raise a futile motion. *See Juan H.*, 408 F.3d at 1273; *Rupe*, 93 F.3d at 1445. Claim 25(d)(5) is denied.

(6)     Roseberry alleges that "counsel improperly conceded crucial issues." (Doc. 32 at 158–59.) He argues that counsel performed ineffectively by stipulating to the chain of custody of evidence without viewing all of the evidence or investigating the chain of custody. (*Id.* at 158.) He also contends that counsel failed to challenge the testimony of the State's handwriting expert and failed to challenge the credentials of other experts. (*Id.* at 159.)

Trial counsel stipulated to the chain of custody of blood samples drawn from Fottler, Roseberry, and Dvoracek. (ROA 133.) A criminalist testified that she had received blood standards from Fottler, Roseberry, and Dvoracek, as well as blood samples taken from the motorhome. (RT 12/11/02 at 52.) The criminalist testified that the blood in the motorhome was Fottler's. (*Id.* at 57.) Roseberry does not suggest that there was an issue with the chain of custody, nor does he argue that he was prejudiced by the stipulation. As Respondents note, there was no question that Fottler was shot in the motorhome so the fact that his blood was found there did not prejudice the defense.

Roseberry does not specify the basis for any challenge to the handwriting expert's testimony. At a pretrial evidentiary hearing, counsel objected on foundation grounds to the handwriting exemplars, but the court overruled the objection. (RT 6/14/02 at 176–77.) Roseberry does not suggest what was deficient in counsel's objection or, after the exemplars were admitted, how counsel performed deficiently in his cross-examination of the witness.

Finally, Roseberry's allegation that counsel performed ineffectively by failing to challenge the credentials of other, unidentified, experts is vague and conclusory. Claim 25(d)(6) is denied.

-41-

(7)     Roseberry alleges that "trial counsel's statements and arguments to the jury were nonsensical, inconsistent, and ineffective." (Doc. 32 at 159.)  He does not indicate, however, which statements were nonsensical, inconsistent, and ineffective. (*Id.*)  He argues that counsel performed ineffectively by conceding the predicate felony for the felony murder count during closing argument. (*Id.*)  That concession did not prejudice the defense because, as Respondents note, Roseberry himself testified that he had transported, and conspired to transport, marijuana for the Pembertons. (RT 12/18/02 at 23–97.)  Claim 25(d)(7) is denied.

    e.     Trial counsel performed deficiently and prejudicially during the sentencing phases of Roseberry's trial

(1)     Roseberry alleges that counsel "failed to adequately investigate and rebut the State's aggravation evidence and arguments" and failed to "present any opening statement or evidence in the aggravation phase." (Doc. 32 at 160.)  As issues counsel should have explored, Roseberry lists "mental impairment and lack of reasoning, factual inconsistencies in this case, and general challenges to the overbroad application of the factor." (*Id.*)

At the aggravation phase of trial, the parties presented no new evidence.  (RT 12/20/02.)  The prosecutor and defense counsel argued their positions. (*Id.* at 18–29.)

Roseberry does not carry his burden of showing that counsel's performance was deficient or that he was prejudiced.  The court instructed the jury that the State must prove beyond a reasonable doubt that "pecuniary gain was a motive cause or impetus for the murder and not merely the result of the murder." (*Id.* at 30–31.)  The evidence was overwhelming that Roseberry murdered Fottler so that he could sell the marijuana for himself.  Offering an opening statement would not have affected the jury's finding.  Roseberry does not detail what evidence counsel should have presented regarding Roseberry's mental state that would have had any relevance to the pecuniary gain factor after the jury had convicted Roseberry of first-degree murder.  Claim 25(e)(1) is denied.

-42-

(2)     Roseberry again alleges that counsel alienated the jurors and failed to adequately voir dire the juror before sentencing.  (Doc. 32 at 160.)  The Court has previously addressed these allegations.  Claim 25(e)(2) is denied.

(3)     Roseberry alleges that counsel failed to adequately investigate and present relevant mitigating evidence.  (Doc. 32 at 161–65.)  The PCR court denied this claim on the merits, finding that Roseberry was not prejudiced by counsel's presentation of mitigating evidence.  (Doc. 46-4, Ex. HHHHHHH at 6–7.)

As Roseberry notes (Doc. 49 at 83), however, because he did not include this claim in his Petition for Review to the Arizona Supreme Court, the claim is defaulted.[18]  (Doc. 45-3, Ex. D.)  Because Respondents waived the defense of procedural default, the Court will consider the claim.  The Court's review of the claim will be *de novo*.

### (a)     Evidence presented at sentencing

For the mitigation phase of sentencing, trial counsel retained Jack Brown, a retired federal probation officer, and Dr. Virginia Conner, a neuropsychologist.  Brown, who had no training as a mitigation specialist in capital cases, testified that he was asked to gather "[a]ll the background information that can be found—medical, educational, employment, marital." (RT 6/4/03, p.m., at 17.)  Brown met with Roseberry four times.  (*Id.* at 18.)  He interviewed family members, including the first of Roseberry's ex-wives, his oldest daughter, his daughter's husband, a financial officer who worked for Roseberry's asbestos removal company, and Roseberry's childhood best friend.  (*Id.* at 19–20, 26, 31–32, 34.)  Brown was unable to reach Roseberry's second and third wives.  (*Id.* at 29.)  Brown also obtained Roseberry's Social Security file and medical records from "about a dozen doctors and institutions" based on information provided by Roseberry.  (*Id.* at 24.)  Counsel provided Brown with medical releases signed by Roseberry.  (*Id.*)

---

[18]  In Arizona, fair presentation of a federal habeas claim in state court requires capital petitioners to present their allegations not only to the PCR court but also to the Arizona Supreme Court upon denial of relief. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999); *Swoopes v. Sublett*, 196 F.3d 1008 (9th Cir. 1999) (per curiam) (explaining that capital petitioners must seek review in Arizona Supreme Court to exhaust claims).

At the mitigation hearing, Brown testified that Roseberry's background was "average." (*Id.* at 19.)  Although his family was "relatively poor," Roseberry was not aware "he was poor at the time." (*Id.*)  Brown testified that two of Roseberry's children had died in infancy. (*Id.*)  He testified that Roseberry was a hard worker who had owned a successful business. (*Id.* at 20–21.)  He explained that Roseberry was now disabled and unable to work due to emphysema. (*Id.* at 23.)  Brown also testified about Roseberry's other ailments: Roseberry had a stent implanted in an artery in 2000; he had prostate surgery in 1999; and he had been diagnosed with adult onset diabetes. (*Id.* at 25–27, 39.)  Roseberry's first wife and daughter told Brown that Roseberry had once been hit in the head by a steel bar at work. (*Id.* at 28–29.)

Roseberry's oldest daughter and son-in-law told Brown that Roseberry was a very good father and a "fantastic person." (*Id.* at 32.)  Roseberry's childhood friend told Brown that Roseberry was a "nice guy," "not a fighter," a "hard worker," and "easy to get along with." (*Id.* at 35.)  Brown noted that Roseberry did not have a criminal history. (*Id.* at 39–40.)  Roseberry's first wife and son-in-law told Brown that Roseberry liked to gamble. (*Id.* at 36.)

Brown testified that Roseberry's memory seemed to be getting worse over the course of their interviews. (*Id.* at 33–34.)  He noted that Roseberry's affect was flat, but he cried when discussing the deaths of his young children. (*Id.* at 33.)

Dr. Conner, the neuropsychologist, testified that she first performed an intake interview with Roseberry to determine "the context of [his] life," including the presence of any developmental disorders, hyperactivity, a personality disorder, oppositional defiance, or a conduct disorder. (*Id.* at 70.)  She also conducted a record review and wrote a report detailing the materials she reviewed and summarizing her findings. (*Id.* at 71.)  Dr. Conner tested Roseberry's IQ, which she measured at 108, and his memory. (*Id.* at 71–72, 77.)  She also administered a personality inventory and psychopathy checklist to rule out personality disorders or psychopathology. (*Id.* at 72–73, 88.)  She then conducted neuropsychological testing. (*Id.* at 77, 94.)

Dr. Conner concluded that Roseberry suffered from "mild impairment" involving "frontal lobe functioning." (*Id.* at 77.) This impairment would affect his judgment, memory, and motor skills. (*Id.*)

Dr. Conner discussed a number of risk factors that could have contributed to Roseberry's impairment, including two head injuries. (*Id.*) She testified that "according to medical history," Roseberry had fallen from a barn and experienced loss of consciousness with three hours of antegrade amnesia. (*Id.* at 78.) She also noted the injury Roseberry had suffered at work, which resulted in brief loss of consciousness, disorientation, and "typical head injury sequelae." (*Id.*) Dr. Conner testified that the injury "wasn't enough that it was going to drastically make an impairment that he couldn't function," but it was "one neurological risk factor." (*Id.*) Diabetes was another risk factor because it affects blood flow to the brain. (*Id.*) Dr. Conner testified that Roseberry had suffered two diabetic comas. (*Id.* at 80.) Finally, Dr. Conner stated that Roseberry's high blood pressure and sleep apnea were additional risk factors for brain impairment. (*Id.* at 80–81.)

Roseberry's counsel also presented videotaped statements from his mother, daughter, and son-in-law, and a letter from a friend. These witnesses offered humanizing information showing that Roseberry was a good father and father-in-law and praising him as kind, generous, and a man of integrity. The videotaped witnesses also discussed Roseberry's various ailments and head injuries.

> (b)   *New evidence*

In these habeas proceedings the Court granted Roseberry's request to expand the record to include materials relevant to the claim of ineffective assistance of counsel at sentencing. These materials included reports from experts retained by PCR counsel. In a report dated April 19, 2012, Dr. Barry Morenz, a psychiatrist, diagnosed Roseberry with cognitive disorder not otherwise specified ("NOS"), depressive disorder NOS, anxiety disorder NOS, and pathological gambling; personality disorder NOS with paranoid and narcissistic features; and high blood pressure, sleep apnea, diabetes, angina, and prostate

-45-

problems. (Doc. 62-5, Ex. 205.) Dr. Morenz also opined that due to these mental and physical difficulties, Roseberry was unable to assist in his "appeals." (*Id.*)

Dr. Alex Hishaw, a neuropsychiatrist, examined Roseberry and prepared a report dated June 28, 2011. (*Id.*, Ex. 206.) Roseberry underwent an EEG and an MRI. The EEG was normal. (*Id.* at 4.) The MRI revealed "no evidence of mass or mass effect, mild age related cerebral volume loss, areas of T2 prolongation in the deep periventricular white matter that was felt to represent diffuse microangiopathic changes, and no areas of abnormal enhancement." (*Id.*) Dr. Hishaw noted that Roseberry experienced issues with fatigue and concentration. He found no "underlying dementing process such as Alzheimer's" and no "difficulties in other areas of cognition such as language, visuospatial orientation, or frontal/executive function." (*Id.* at 5.) Dr. Hishaw acknowledged Roseberry's "history of several head injuries," but noted that he was never hospitalized and never suffered a sustained period of unconsciousness "and so at the most may have experienced mild traumatic brain injuries in the past." (*Id.*) The impacts the injuries "might have had on his current cognition are unknown." (*Id.*) Dr. Hishaw concluded, "I do not find significant reason for direct neurologically associated cognitive concern." (*Id.* at 6.)

The expanded record also includes a report from Dr. Robert Heilbronner, a neuropsychologist, dated February 17, 2017, and a letter dated March 10, 2017, from Dr. Erin Bigler, another neuropsychologist, who reviewed brain imaging and neuropsychological studies but did not examine Roseberry. (Doc. 62, Ex's 207, 209.) Drs. Heilbronner and Bigler agree that "Roseberry had compromised neuropsychological function at the time of the crimes." (Doc. 62, Ex. 209 at 6.) They base their conclusion on neuropsychological test results as well as information provided by family members describing changes in Roseberry's behavior around the time of the crimes, including increased agitation and anxiety, restlessness, paranoia, susceptibility to the influence of others, and out-of-control gambling. (*Id.*) Although Heilbronner and Bigler did not rule out head trauma as the cause of the decline in Roseberry's brain function, Bigler opined

that the "the imaging reflects more of a neurodegenerative state consistent with vascular pathology or progressive neurodegeneration." (*Id.*) They agreed that if Dr. Conner had interviewed family members or had access to their declarations, "she might have considered the possibility that Roseberry's cognitive deficits and changes in behavior were more likely a manifestation of an incipient dementia and not due to the effects of repeated head trauma." (*Id.* at 5.)

In addition, the expanded record includes declarations from family members and acquaintances who attest that Roseberry grew up in a poor family, that his health was bad, that his mental status had been in decline and his behavior had changed around the time of the crimes, and that he had a serious gambling problem. (Doc. 57, Ex's 7–34.) The declarants also state that their belief Roseberry was either too timid or too smart to commit such a violent and "dumb" crime. (*Id.*, *see, e.g.*, Ex's 16, 17, 23.)

> (c) *Analysis*

Roseberry argues that counsel's investigation into mitigating evidence was untimely and incomplete. (*Id.*) He alleges that mitigation specialist Brown was unqualified and his "investigation, relationships, and recommendations were ill-investigated, and even more poorly presented." (*Id.* at 163.) Finally, he alleges that Dr. Conner "was never given material and relevant records or background, and was never properly prepared for her testimony," which was "not tied . . . together in a coherent manner." (*Id.* at 164.)

Roseberry argues that as a result of these alleged deficiencies, the following areas of mitigation were omitted during his sentencing:

> Mr. Roseberry grew up in a poverty-stricken family, where he was the frowned-upon step-child. His step-father's family looked down on him and his family, and considered their behaviors odd. He grew up always wanting better for himself, and to seem successful. His wife Diane Roseberry demanded that he keep her well, and wanted a flashy lifestyle for herself and her children. She and Mr. Roseberry both had and developed a serious addiction to gambling that affected their lives and ruined their business. Family members and others noticed Mr. Roseberry's personality changing, and him becoming more irrational and erratic. Diane preyed on this. . . . Records would have shown not only the seriousness of Mr. Roseberry's confluence of health problems (ranging from severe high blood pressure and

diabetes to sleep apnea), but also the severity of the Roseberrys' spiral into gambling addiction.

(Doc. 32 at 164–65.)

Roseberry also asserts that "neuroimaging clearly available at the time of trial would have changed and supported Dr. Conner's suggestions, and demonstrated serious brain pathologies, including in the frontal lobe of Mr. Roseberry's brain. This damage portended, at the very least, the likely onset of dementia." (*Id.*)

Roseberry lists as additional omitted mitigating evidence his "family history of mental and physical illness; poverty, familial instability, neighborhood environment; the loss of loved ones; military service of close relatives; injuries and deaths; [and] toxic-health exposures at work." (*Id.* at 145.)

*Strickland* held that "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." 466 U.S. at 697; *see Gallegos v. Ryan*, 820 F.3d 1013, 1027 (9th Cir. 2016). "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697. Accordingly, the Court will first consider the prejudice prong in evaluating Roseberry's arguments and additional mitigation evidence.[19]

In assessing prejudice under *Strickland*, courts "reweigh the evidence in aggravation against the totality of available mitigating evidence." *Wiggins v. Smith*, 539 U.S. 510, 534 (2003). The "totality of the available evidence" includes "both that adduced at trial, and the evidence adduced" in subsequent proceedings. *Id.* at 536 (quoting

---

[19] Although it does not reach the issue of deficient performance, the Court notes that this is not a case where "penalty phase counsel did not conduct any independent investigation, not even consulting with his client." *Summerlin v. Schriro*, 427 F.3d 623, 634 (9th Cir. 2005); *see Ainsworth v. Woodford*, 268 F.3d 868, 873 (9th Cir. 2001) (counsel's preparation for the penalty phase consisted of interviewing one defense witness for ten minutes on the morning she was to testify and failing to examine defendant's employment, medical, prison, probation, or military records); *Correll v. Stewart*, 137 F.3d 1404, 1412 (9th Cir. 1998) (noting there was an "almost complete absence of effort on the part of Correll's counsel to investigate, develop, and present mitigating evidence").

*Williams*, 529 U.S. at 397–98). The question is not whether a court can be certain that counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. *See Belmontes*, 558 U.S. at 27. "*Strickland* does not require the State to 'rule out' a sentence of life in prison to prevail. Rather, *Strickland* places the burden on the defendant, not the State, to show a 'reasonable probability' that the result would have been different." *Id.* Roseberry fails to meet that burden.

"[A] penalty phase ineffective assistance claim depends on the magnitude of the discrepancy between what counsel did investigate and present and what counsel could have investigated and presented." *Stankewitz v. Woodford*, 365 F.3d 706, 716 (9th Cir. 2004). Citing *Rompilla v. Beard*, 545 U.S. 374, 393 (2005), Roseberry asserts there is a "stark contrast between what trial counsel investigated and presented and what was available at the time of trial." (Doc. 32 at 163.) The Court disagrees.

In *Rompilla*, counsel failed to uncover and present strong mitigating evidence despite the fact that the prosecutors had provided defense counsel with the file containing the information. The evidence showed that as a child Rompilla was beaten by his father with fists, straps, belts, and sticks, and that his father locked him and his brother in a dog pen filled with excrement. 545 U.S. at 391–92.

Nothing in Roseberry's social history approaches this level of mitigating evidence. As Brown testified at sentencing, Roseberry grew up in poverty. The new evidence offered in these habeas proceedings details that poverty: Roseberry lived in a small house on property owned by his stepfather Fred Brown's family; they did not have indoor plumbing or electricity; the Browns treated the Roseberrys like outsiders instead of family; there were rumors that Roseberry was mistreated by Brown. Despite this hardscrabble upbringing, Roseberry was not exposed to the kind of abuse and deprivation whose omission at sentencing has been found to be prejudicial.

In *Wiggins,* for, example, trial counsel failed to present evidence that Wiggins suffered consistent abuse during the first six years of his life, was the victim of "physical

torment, sexual molestation, and repeated rape during his subsequent years in foster care," was homeless for portions of his life, and was deemed to have diminished mental capacities. 539 U.S. at 535. In *Williams,* counsel failed to present graphic evidence of Williams' "nightmarish childhood" including the fact that he had been committed at age eleven, was subjected to dramatic mistreatment and abuse during his early childhood, and was "borderline mentally retarded." 529 U.S. at 395; *see Douglas v. Woodford*, 316 F.3d 1079, 1088–90 (9th Cir. 2003) (finding prejudice existed where counsel omitted evidence that defendant was raised by alcoholic foster father who locked him in a closet, had to scavenge for food, was beaten and gang-raped by other prisoners when he was a teenager, and was a decorated Marine).

In *Apelt v. Ryan*, by contrast, the Ninth Circuit found no prejudice despite counsel's failure to present evidence of childhood poverty, physical abuse, repeated sexual abuse, and hospitalization for mental health problems. 878 F.3d at 821; *see Payton v. Cullen*, 658 F.3d 890, 895 (9th Cir. 2011) ("Even if his biological father were abusive in the first five years of Payton's childhood and he felt sad and neglected, his experience is not comparable to those in other cases where courts have found a reasonable probability that the outcome would have been different.").

Nor is Roseberry's new mental health evidence compelling. There is no great disparity between what was presented at sentencing and what Roseberry now contends should have been presented.

Dr. Conner testified at sentencing that Roseberry suffered from "mild impairment" involving "frontal lobe functioning" and that such impairment affected his judgment and memory. (RT 6/4/03, p.m., at 77.) She suggested various physical causes for this dysfunction, including head injuries and disease. (*Id.* at 78–81.) Roseberry fails to show that Dr. Conner's opinion was less persuasive or significant than the opinions now offered by Drs. Heilbronner and Bigler. Ascribing Roseberry's brain dysfunction to incipient dementia rather than to head injuries would not have affected the strength of the mitigating evidence considered by the jury.

Roseberry argues that counsel performed ineffectively by failing to support Dr. Conner's testimony with imaging of Roseberry's brain, but both Heilbronner and Bigler opined that the key evidence of Roseberry's decline was provided by family members who observed changes in his behavior prior to the crimes. Moreover, the results of Roseberry's brain imaging, completed more than a decade after the crimes, were less than compelling. As set forth in Dr. Hishaw's report, the EEG results were normal and the MRI revealed "no evidence of mass or mass effect, mild age related cerebral volume loss, . . . diffuse microangiopathic changes, and no areas of abnormal enhancement." (Doc. 62–5, Ex. 6 at 4.)

The other mitigating evidence is either cumulative or not weighty. Evidence of Roseberry's physical ailments was presented at sentencing, as was evidence of his good character and the fact that his family members loved him. Counsel also presented evidence that Roseberry was deeply affected by the loss of two infant children.

Evidence of a gambling addiction would not have been persuasive mitigation. As Respondents note, the State could have used such evidence to show Roseberry's motivation for killing Fottler. The argument that Roseberry needed more money to feed his gambling addiction, or to maintain his wife's preferred lifestyle, would not have been consistent with the theory that Roseberry was a good man whose deteriorating physical and mental condition, or incipient dementia, explained his descent into criminal activity. In fact, such evidence would have had a "double-edged" effect, painting Roseberry's activities in a more purposeful and sinister light. *See Belmontes*, 558 U.S. at 24–25.

(d)    Conclusion

Roseberry has not demonstrated that the discrepancy between what was presented in mitigation and what could have been presented was of sufficient magnitude to establish prejudice. *See Stankewitz*, 365 F.3d at 716. The omitted mitigating evidence is largely inconclusive or cumulative, such that it "barely . . . alter[s] the sentencing profile presented" to the jury. *Strickland*, 466 U.S. at 700; *see Babbitt v. Calderon*, 151 F.3d 1170, 1175 (9th Cir. 1998) (finding no prejudice where counsel failed to present cumulative

mitigating evidence); *Van Hook*, 558 U.S. at 12 (finding no prejudice where new evidence added "nothing of value").

As the Ninth Circuit has observed, "There will always be more documents that could be reviewed, more family members that could be interviewed and more psychiatric examinations that could be performed." *Leavitt v. Arave*, 646 F.3d 605, 612 (9th Cir. 2011). In Roseberry's case, the record demonstrates that even if counsel had conducted a more in-depth investigation, significant new mitigation evidence was not available.

For the reasons set forth above, Claim 25(e)(3) is denied.

(4) Roseberry alleges that counsel "failed to adequately research, present, brief, and argue against the trial court's improper procedure for making the findings required by *Enmund/Tison*" and "failed to adequately research and argue the issues presented elsewhere in this Petition, including challenges to Arizona's death-penalty scheme." (Doc. 32 at 165.) The Court has addressed the former argument. With respect to the latter argument, counsel did not perform ineffectively by failing to raise challenges to Arizona's death penalty statute because those challenges are meritless, as set forth below.

(5) Roseberry alleges that counsel "entirely failed to assist the jury in understanding its role, its opportunity to exercise mercy, and the necessity for doing so in this case." (Doc. 32 at 165.) He further alleges that counsel "failed to prepare and present evidence and arguments regarding individualized sentencing, proportionality and the key concepts of sentencing within the bounds of the Eighth Amendment." (*Id.* at 166.)

These allegations are too vague and conclusory to merit relief under *Strickland*. Roseberry does not cite cases holding that counsel performs ineffectively by failing to explain proportionality review and other concepts of sentencing. Moreover, the trial court instructed the jury that, "Mitigating circumstances are factors that, in fairness and mercy, may support a sentence other than death" and that "you should consider the circumstances of the crime and any aspect of the defendant's character or background." (RT 6/4/03, a.m., at 4.) These instructions obviated any prejudice resulting from counsel's alleged failure to explain sentencing concepts under the Eighth Amendment.

(6)     Roseberry alleges that counsel performed ineffectively with respect to a juror question asked during penalty-phase deliberations.  (Doc. 32 at 166.)  The jurors asked whether their decision on the penalty had to be unanimous.  (ROA 223.)  The court correctly answered yes.  (*Id.*)  Counsel did not perform ineffectively.

(7)     Roseberry alleges that trial counsel "failed to request or adequately argue for correct jury instructions."  (Doc. 32 at 167.)  He first argues that counsel did not adequately support their objection to the court's causal-nexus instruction, which told the jury that they could not find a circumstance mitigating if there was no connection with the crime.  (*Id.*)  Roseberry can establish neither deficient performance nor prejudice.  There is no reason to believe that additional argument would have persuaded the judge to omit the instruction.  Speculation that a different argument would have prevailed is insufficient under *Strickland.*

Roseberry also argues that counsel "permitted the court to give the jury a false impression of the possible sentences Mr. Roseberry could receive."  (*Id.* at 167.)  The court erroneously instructed the jury that one of Roseberry's three potential sentences was life with the possibility of parole after 25 years.  (ROA 220.)  *See Lynch v. Arizona*, 136 S. Ct. 1818 (2016).

In *Simmons v. South Carolina*, 512 U.S. 154 (1994), the Court held that when future dangerousness is an issue in a capital sentencing determination, the defendant has a due process right to require that his sentencing jury be informed of his ineligibility for parole.  *Id.* at 171.  *Simmons* is inapplicable because the State did not argue that Roseberry represented a future danger.  In addition, *Lynch* would not apply retroactively to Roseberry's sentencing.  *See O'Dell v. Netherland*, 521 U.S. 151, 167 (1997).  Therefore, Roseberry was not prejudiced by counsel's failure to secure a *Simmons* instruction.  This claim is denied.

### f.     Conclusion

Roseberry has not met his burden of showing "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Richter*, 562 U.S. at 104.  He has also failed to meet his burden of showing,

-53-

at either the guilt or penalty phase of trial, that there was a reasonable probability of a different outcome absent counsel's "unprofessional errors." *Strickland*, 466 U.S. at 694. In sum, counsel did not make errors "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Richter*, 562 U.S. at 104 (quoting *Strickland*, 466 U.S. at 687).

### 2. Claim 26: Ineffective assistance of appellate counsel

Roseberry alleges that appellate counsel performed at a constitutionally ineffective level with respect to approximately 30 issues. He alleges that appellate counsel performed ineffectively by failing to raise a challenge to the causal-nexus instruction. (Doc. 32 at 169, 172–74.) He also alleges that appellate counsel performed ineffectively by failing to argue that the trial court erred by making the *Enmund/Tison* determination. (*Id.* at 174–75.) The PCR court denied these claims.

Roseberry further alleges that appellate counsel "failed to discover, raise, and preserve all issues related to all phases of the investigation and trial." (*Id.* at 171.) Roseberry alleges that appellate counsel "failed to collect, review, preserve, and recreate the record, as well as maintain case files and provide the complete case to subsequent counsel." (*Id.* at 178.) Finally, Roseberry alleges that "appellate counsel performed deficiently and to Mr. Roseberry's prejudice throughout his representation." (*Id.* at 179.) These claims were not raised in state court. *Martinez* does not apply to the claims, *Davila*, 137 S. Ct. at 2062–63, and they would be defaulted and barred from deferral review but for Respondents' waiver of a procedural default defense.

The Fourteenth Amendment guarantees a criminal defendant the effective assistance of counsel on his first appeal as of right. *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). A claim of ineffective assistance of appellate counsel is reviewed under the *Strickland* standard. *See Miller v. Keeney*, 882 F.2d 1428, 1433–34 (9th Cir. 1989). A petitioner must show that counsel's appellate advocacy fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's deficient performance, the petitioner would have prevailed on appeal. *Smith v. Robbins,* 528 U.S. 259, 285–86 (2000).

"A failure to raise untenable issues on appeal does not fall below the *Strickland* standard." *Turner v. Calderon*, 281 F.3d 851, 872 (9th Cir. 2002); *see also Wildman v. Johnson*, 261 F.3d 832, 840 (9th Cir. 2001) (explaining that appellate counsel could not be found to have rendered ineffective assistance for failing to raise issues that "are without merit"). Nor does appellate counsel have a constitutional duty to raise every nonfrivolous issue requested by a petitioner. *Miller*, 882 F.2d at 1434 n.10 (citing *Jones v. Barnes*, 463 U.S. 745, 751–54 (1983)); *see Smith v. Stewart*, 140 F.3d 1263, 1274 n.4 (9th Cir. 1998) (counsel not required to file "kitchen-sink briefs" because doing so "is not necessary, and is not even particularly good appellate advocacy"). In fact, "weeding out of weaker issues is . . . one of the hallmarks of effective appellate advocacy." *Miller*, 882 F.2d at 1434; *see Smith v. Murray*, 477 U.S. 527, 536 (1986).

### a. Causal-nexus and *Enmund/Tison* claims

In his PCR petition, Roseberry raised two claims of ineffective assistance of appellate counsel: that counsel failed to raise a challenge to the erroneous causal-nexus instruction and failed to challenge the *Enmund/Tison* finding made by the trial court. (Doc. 66-2, Ex. RRRR.)

The PCR court denied the causal-nexus claim, finding that any prejudice caused by appellate counsel's failure to raise the issue was cured by the Arizona Supreme Court's independent review of Roseberry's sentence. (Doc. 46-4, Ex. HHHHHHH at 4–5.) On review of the PCR court's ruling, the Arizona Supreme Court "clarif[ied] that our independent review of Roseberrys death sentence considered all the mitigation evidence presented, without requiring a causal connection to the crimes, and we found it not sufficiently substantial to call for leniency. Roseberry therefore suffered no prejudice from any deficient performance by appellate counsel." *Roseberry II*, 237 Ariz. at 508, 353 P.3d at 848.

Next, the PCR court found that given the "overwhelming evidence" that Roseberry shot Fottler, a "reasonable appellate attorney could conclude that he would not prevail on the *Enmund/Tison* ruling." (Doc. 46-4, Ex. HHHHHH at 4.)

These decisions are neither contrary to nor an unreasonable application of clearly established federal law, nor are they based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d)(1).

As the Arizona Supreme Court noted in denying relief on the causal-nexus issue, *Roseberry II*, 237 Ariz. at 510, 353 P.3d at 850, independent reweighing and harmless error review are constitutionally permissible in cases of capital sentencing error. *See Clemons*, 494 U.S. at 753–54. The Arizona Supreme Court reiterated that on direct appeal it had "considered all mitigation evidence without regard to its connection to the crimes and comprehensively reviewed the record and the sentence." *Roseberry II*, 237 Ariz. at 510, 353 P.3d at 850. This independent review cured the causal-nexus instructional error, and Roseberry was not prejudiced by appellate counsel's failure to challenge the instruction.

With respect to the *Enmund/Tison* finding made by the trial court, Roseberry was not prejudiced by appellate counsel's failure to raise the issue. First, the evidence that Roseberry shot Fottler was overwhelming. Also, as discussed previously, even if appellate counsel had argued that the jury should have made the *Enmund/Tison* finding, the Arizona Supreme Court would have rejected the argument because the federal constitution does not require the finding to be made by a jury. *Cabana*, 474 U.S. at 385.

Roseberry was not prejudiced by appellate counsel's failure to raise these issues, and the claims of appellate counsel ineffectiveness are denied.

####      b.      Trial court errors

Roseberry alleges that appellate counsel performed ineffectively by failing to raise 21 separate claims of errors committed by the trial court. (Doc. 32 at 175–76.) Roseberry did not raise these appellate ineffectiveness claims in state court, but Respondents have waived their defense of procedural default.

The claims are listed in two sentences with no supporting analysis or argument. Roseberry has not attempted to meet his burden of showing that appellate counsel performed deficiently and that, absent the deficient performance, there was a reasonable probability that Roseberry would have prevailed on appeal. The claims are denied as vague

and conclusory. *See Greenway*, 653 F.3d at 804; *James*, 24 F.3d at 26; *see also Moody v. Thomas*, 89 F. Supp. 3d 1167, 1263 (N.D. Ala. 2015) (rejecting appellate ineffective assistance claim where petitioner "failed to plead sufficient facts to indicate that his appellate counsel was ineffective for not raising . . . claims of alleged prosecutorial misconduct, as well as a claim regarding the cumulative effect of the alleged misconduct"), *aff'd sub nom. Moody v. Comm'r, Alabama Dep't of Corr.*, 682 F. App'x 802 (11th Cir. 2017).

In addition, the Court has reviewed the claims and found, for reasons discussed above with respect to Claim 24, that there was not a reasonable probability of a different outcome on appeal if appellate counsel had raised them.

The Court also rejects Roseberry's argument that he is entitled to federal habeas relief based on alleged violations of state procedural and evidentiary rules. (Doc. 49 at 116–17.) "[F]ederal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991); *see Jammal v. Van de Kamp*, 926 F.2d 918, 919 (9th Cir. 1991) ("[F]ailure to comply with the state's rules of evidence is neither a necessary nor a sufficient basis for granting habeas relief.").

### c.    Failure to challenge Arizona's death penalty statute

Roseberry alleges that appellate counsel performed ineffectively by failing to argue that "Arizona death-penalty statute is unconstitutional because of its requirement that mitigation is proven by a preponderance of the evidence, its jury-selection process, and its failure to require a special verdict form in mitigation." (Doc. 32 at 176.)

Roseberry was not prejudiced by appellate counsel's failure to raise these claims because they are without merit and would have been denied by the Arizona Supreme Court. *See Walton v. Arizona*, 497 U.S. 639, 650 (1990) (rejecting the argument that A.R.S. § 13–703(C) is unconstitutional because it requires a defendant to prove mitigating circumstances by a preponderance of the evidence), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584; *Van Adams*, 194 Ariz. at 417, 984 P.2d at 25 ("[W]e have previously rejected the argument that, because the judge determines the defendant's

sentence, the jury should not be death qualified."); *Roseberry*, 210 Ariz. at 373, 111 P.3d at 415 n.12 ("There cannot be a special verdict on mitigation because the jurors need not agree that a mitigating factor has been proven to exist.").

### d. Failure with respect to the record and the case file

Roseberry alleges that appellate counsel performed ineffectively by failing "to collect, review, preserve, and recreate the record" and by failing to "maintain case files and provide the complete case to subsequent counsel." (Doc. 32 at 178.)

As Respondents note, "Roseberry offers nothing more than his self-serving assertion to establish that appellate counsel failed to collect and review the entire record." (Doc. 45 at 169.) In his reply brief Roseberry does not contest this but argues only that the case file received by PCR counsel from appellate counsel was incomplete. (Doc. 49 at 117.) He asserts that appellate counsel either did not receive or lost trial counsel's complete case file. (*Id.*) This allegation is conclusory. Moreover, Roseberry has not attempted to establish prejudice caused by appellate counsel's alleged failure to maintain the case file. He does not allege that he was prevented from raising any claims due to the incomplete file. Because Roseberry fails to meet his burden under *Strickland*, this claim is denied.

### e. Appellate counsel performed ineffectively throughout his representation.

Roseberry alleges that "on information and belief, appellate counsel did not adequately prepare or perform oral argument, appellate counsel failed to meet and adequately communicate with Mr. Roseberry, and, overall, appellate counsel failed to abide by the prevailing professional norms." (Doc. 32 at 179.) This vague and conclusory claim is denied.

### 3. Claim 28: ineffective assistance of PCR counsel

Roseberry alleges that PCR counsel performed ineffectively. (Doc. 32 at 180.) There is no constitutional right to an attorney in state post-conviction proceedings, so there can be no cause of action for ineffective assistance of post-conviction counsel. *Coleman*

1    *v. Thompson*, 501 U.S. 722, 752 (1991); *Pennsylvania v. Finley*, 481 U.S. 551, 553 (1987).

2    Claim 28 is denied.

3    **E.    Claims Challenging Arizona's Death Penalty Statute**

4        Roseberry raised the following claims on direct appeal where they were rejected by

5    the Arizona Supreme Court.  *Roseberry*, 210 Ariz. at 374, 111 P.3d at 416.  The claims are

6    meritless.

7        **1.    Claim 29**

8        Roseberry alleges that capital punishment is categorically cruel and unusual, in

9    violation of the Eighth and Fourteenth Amendments.  (Doc. 32 at 191.)

10        Clearly established federal law holds that the death penalty does not constitute cruel

11   and unusual punishment.  *See Gregg v. Georgia*, 428 U.S. 153, 169 (1976); *see also Roper*

12   *v. Simmons*, 543 U.S. 551, 568–69 (2005) (noting that the death penalty is constitutional

13   when applied to a narrow category of crimes and offenders).  Claim 29 is denied.

14       **2.    Claim 30**

15       Roseberry alleges that execution by lethal injection is cruel and unusual punishment

16   and Roseberry's death sentence, if carried out, will violate his rights under the Eighth and

17   Fourteenth Amendments.  (Doc. 32 at 195.)  Roseberry does not indicate how the Arizona

18   Supreme Court's denial of this claim conflicts with or unreasonably applies controlling

19   Supreme Court law.  *See Baze v. Rees,* 553 U.S. 35 (2008).  Moreover, the Ninth Circuit

20   has concluded that Arizona's lethal injection protocol does not violate the Eighth

21   Amendment.  *Dickens v. Brewer*, 631 F.3d 1139 (9th Cir. 2011).

22       In addition, prior to execution, Roseberry may present this claim in a separate civil

23   rights action under 42 U.S.C. § 1983.  *See Hill v. McDonough*, 547 U.S. 573, 579–80,

24   (2006) (recognizing that a challenge to the State's execution method may be brought in a §

25   1983 action).  Claim 30 is denied.

26       **3.    Claim 31**

27       Roseberry alleges that the death penalty is irrational, arbitrarily imposed, and serves

28   no purpose that is not adequately addressed by life in prison, and therefore violates the

Eighth and Fourteenth Amendments. (Doc. 32 at 204.) Because this allegation is unsupported by clearly established federal law, *see Walton*, 497 U.S. at 655–56, Claim 31 is denied.

### 4. Claim 32

Roseberry alleges that Arizona's capital-sentencing scheme violates the Eighth and Fourteenth Amendments because it affords the prosecutor unlimited discretion to seek the death penalty. (Doc. 32 at 205.)

Clearly established federal law holds that prosecutors have wide discretion in making the decision whether to seek the death penalty. *See McCleskey v. Kemp*, 481 U.S. 279, 296–97 (1987); *Gregg*, 428 U.S. at 199. In *Smith*, the Ninth Circuit rejected the argument that Arizona's death penalty statute is constitutionally infirm because "the prosecutor can decide whether to seek the death penalty." 140 F.3d at 1272. Claim 32 is denied.

### 5. Claim 33

Roseberry alleges that Arizona's capital-sentencing scheme violates the Fifth, Eighth, and Fourteenth Amendments because it denies capital defendants any proportionality review of their sentences. (Doc. 32 at 206.)

There is no federal constitutional right to proportionality review of a death sentence, *McCleskey*, 481 U.S. at 306 (citing *Pulley v. Harris*, 465 U.S. 37, 43–44 (1984)), and the Arizona Supreme Court discontinued the practice in 1992, *State v. Salazar*, 173 Ariz. 399, 417, 844 P.2d 566, 584 (1992). The Ninth Circuit has explained that the interest implicated by proportionality review—the "substantive right to be free from a disproportionate sentence"—is protected by the application of "adequately narrowed aggravating circumstance[s]." *Ceja*, 97 F.3d at 1252. Claim 33 is denied.

### 6. Claim 34

Roseberry alleges that Arizona's capital-sentencing scheme violates the Sixth, Eighth, and Fourteenth Amendments because it does not require the State to prove that the death penalty is the appropriate sentence. (Doc. 32 at 208.)

Arizona's statute complies with constitutional requirements by allowing only certain, specific aggravating circumstances to be considered. *See Blystone v. Pennsylvania*, 494 U.S. 299, 306–07 (1990). In addition to the requirements for determining eligibility for the death penalty, the Supreme Court has imposed a separate requirement for the selection decision, "where the sentencer determines whether a defendant eligible for the death penalty should in fact receive that sentence." *Tuilaepa v. California*, 512 U.S. 967, 972 (1994). A statute that "provides for categorical narrowing at the definition stage, and for individualized determination and appellate review at the selection stage" will ordinarily meet constitutional concerns, *Zant v. Stephens*, 462 U.S. 862, 879 (1983), so long as a state ensures "that the process is neutral and principled so as to guard against bias or caprice," *Tuilaepa*, 512 U.S. at 973.

Arizona's capital sentencing statute requires the sentencing court to consider as mitigating circumstances "any factors proffered by the defendant or the state that are relevant in determining whether to impose a sentence less than death, including any aspect of the defendant's character, propensities or record and any of the circumstances of the offense." A.R.S. § 13–703(G). At the time of Roseberry's appeal, each death sentence was independently reviewed by the Arizona Supreme Court, which reweighed the aggravating and mitigating factors to determine the propriety of the death sentence. Because it provides for "categorical narrowing" at the definition stage and for an "individualized determination" at the selection stage, Arizona's death penalty scheme is not unconstitutional. *See Walton*, 497 U.S. at 652. Claim 34 is denied.

**7.    Claim 35**

Roseberry alleges that Arizona's capital-sentencing scheme violates the Eighth and Fourteenth Amendments because it does not set forth objective standards to guide the sentencer in weighing aggravating factors against mitigating circumstances. (Doc. 32 at 210.)

Again, Arizona's death penalty scheme allows only certain, statutorily-defined aggravating circumstances to be considered in determining eligibility for the death penalty.

This scheme has been found constitutionally sufficient. *See Jeffers*, 497 U.S. at 774–77; *Walton*, 497 U.S. at 649–56; *Woratzeck v. Stewart*, 97 F.3d 329, 334–35 (9th Cir. 1996); *Smith*, 140 F.3d at 1272. Claim 35 is denied.

### 8. Claim 36

Roseberry alleges that Arizona's capital-sentencing scheme violates the Sixth, Eighth, and Fourteenth Amendments because it does not require the prosecution to prove that aggravating factors outweigh mitigating circumstances beyond a reasonable doubt. (Doc. 32 at 211.)

The Constitution does not require that a death penalty statute set forth specific standards for a capital sentencer to follow in their consideration of aggravating and mitigating circumstances. *See Zant*, 462 U.S. at 875; *see also Tuilaepa*, 512 U.S. at 979–80 (stating that the Constitution does not require that a capital sentencer be instructed in how to weigh any particular fact in the capital sentencing decision); *Franklin v. Lynaugh*, 487 U.S. 164, 179 (1988) (rejecting the notion that a specific method for balancing aggravating and mitigating factors is constitutionally required). Nor does the Constitution require that a specific weight be given to any particular mitigating factor. *See Harris v. Alabama*, 513 U.S. 504, 512 (1995). Thus, the Constitution does not require the capital sentencer in Arizona to find that the aggravating circumstances outweigh mitigation beyond a reasonable doubt. *See also Smith*, 140 F.3d at 1272 (rejecting challenges to the "mandatory" quality of Arizona's death penalty statute and its failure to apply the beyond-a-reasonable-doubt standard). Claim 36 is denied.

### 9. Claim 37

Roseberry alleges that Arizona's capital-sentencing scheme violates the Eighth and Fourteenth Amendments because it does not sufficiently channel the discretion of the sentencing authority. (Doc. 32 at 212.)

"The presence of aggravating circumstances serves the purpose of limiting the class of death-eligible defendants, and the Eighth Amendment does not require that these aggravating circumstances be further refined or weighed by [the sentencer]." *Blystone*,

494 U.S. at 306–07. Rulings of both the Ninth Circuit and the United States Supreme Court have upheld Arizona's death penalty statute against allegations that particular aggravating factors do not adequately narrow the sentencer's discretion. *See Jeffers*, 497 U.S. at 774–77; *Walton*, 497 U.S. at 649–56; *Woratzeck*, 97 F.3d at 335. Claim 37 is denied.

### 10.    Claim 38

Roseberry alleges that Arizona's capital-sentencing scheme violates the Eighth and Fourteenth Amendments because it requires a death sentence when the jury finds one aggravating circumstance and no mitigating circumstances. (Doc. 32 at 215.)

The Supreme Court has rejected the claim that Arizona's death penalty statute is impermissibly mandatory. *Walton*, 497 U.S. at 651–52; *see Kansas v. Marsh*, 548 U.S. 163, 173–74 (2006). Claim 38 is denied.

### 11.    Claim 39

Roseberry alleges that Arizona's capital-sentencing scheme violates the Eighth and Fourteenth Amendments because it creates a presumption that death is the appropriate sentence and requires a defendant to affirmatively prove that the sentencing body should spare his life. (Doc. 32 at 217.)

The Supreme Court has rejected the argument that "Arizona's allocation of the burdens of proof in a capital sentencing proceeding violates the Constitution." *Walton*, 497 U.S. at 651. Claim 39 is denied.

## IV. CERTIFICATE OF APPEALABILITY

Pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure, an applicant cannot take an appeal unless a certificate of appealability has been issued by an appropriate judicial officer. Rule 11(a) of the Rules Governing Section 2254 Cases provides that the district judge must either issue or deny a certificate of appealability when it enters a final order adverse to the applicant. If a certificate is issued, the court must state the specific issue or issues that satisfy 28 U.S.C. § 2253(c)(2).

Under § 2253(c)(2), a certificate of appealability may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." This showing can

be established by demonstrating that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner" or that the issues were "adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). For procedural rulings, a certificate of appealability will issue only if reasonable jurists could debate whether the petition states a valid claim of the denial of a constitutional right and whether the court's procedural ruling was correct. *Id.*

The Court finds that reasonable jurists could debate its resolution of Claim 25(e)(3), alleging ineffective assistance of counsel at sentencing for failure to investigate and present mitigating evidence.

## V. CONCLUSION

Based on the foregoing,

**IT IS HEREBY ORDERED** that Roseberry's Petition for Writ of Habeas Corpus (Doc. 32) is **DENIED**. The Clerk of Court shall enter judgment accordingly.

**IT IS FURTHER ORDERED** granting a certificate of appealability with respect to Claim 25(e)(3).

**IT IS FURTHER ORDERED** that the Clerk of Court forward a courtesy copy of this Order to the Clerk of the Arizona Supreme Court, 1501 W. Washington, Phoenix, AZ 85007-3329.

Dated this 2nd day of August, 2019.

_____

Neil V. Wake
Senior United States District Judge

-64-